CASE 64.—ACTION BY EUGENE ROBERTSON AGAINST THE NORTH BRITISH & MERCANTILE INSURANCE CO. —Sept. 24, 1909.

## North British & Mercantile Ins. Co. v. Robertson

Appeal from Logan Circuit Court.

W. P. Sandidge, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1. Insurance—Fire Policy—Waiver of Clause Against Additional Insurance.—A forfeiture under the clause against additional insurance may be waived either by parol agreement or the conduct of the insurer, and silence for an unreasonable time after notice of breach of condition will constitute such conduct.

2. Insurance—Fire Policy—Questions for Jury.—Whether fire policies constituting additional insurance in violation of that clause were issued without the request of insured and by mistake, notwithstanding his acceptance thereof, and payment of premiums, held for the jury.

3. Appeal and Error—Review—Questions of Fact.—A finding not flagrantly against the evidence cannot be disturbed on appeal.

4. Insurance—Fire Policy—Additional Insurance.—Fire policies issued without the request of insured and by mistake and

vol. 134—34

North British & Mercantile Ins. Co. v. Robertson.

which he did not seek to enforce are in effect no insurance at all, and their mere formal existence does not render void another policy under a clause providing that it should be void if insured then had or should thereafter procure any additional insurance, whether valid or not.

SIMS, DuBOSE & RHODES for appellant.

CHAS. H. SHIELD of counsel.

## SUMMARY OF POINTS.

1. Appellee brought suit against the appellant in the lower court upon an insurance policy for $2,500.00. On the face of this policy authority was given for $12,500.00 concurrent insurance. When the fire occured appellee had $20,800 concurrent insurance on the policy covered by the policy sued on herein. We were entitled to have our demurrer sustained upon this ground, or a peremptory given for the defendant. Northern Assurance Company v. Grand View Building Association, 183 U. S. page 308; Phoenix Insurance Company v. Stevenson, 78 Ky. 150; Stevenson v. Phoenix Insurance Company, 83 Ky., page 7; Phoenix Insurance Company, contra, v. Spear, 87 Ky., page 285.

2. Conceding that notice to the agent of concurrent insurance is sufficient, yet the agent in this case knew of only $17,300.00 concurrent actually in force at the time of the fire.

3. Appellee claims $3,500.00 of this he did not know was in force; nevertheless he made claim for it, filing the policies in support of his claim, and did not know that he could not sustain this part until after he had consulted with his counsel, two months after the fire occured.

4. Ignorance of the insurer of the number of policies or the amount is not a valid defense, even if proved, which was not done in this case.

BROWDER & BROWDER for appellee.

1. The local insurance agents' knowledge of so-called over insurance is imputed to his company, irrespective of any provisions in the policy.

2. Where "second insurance" is issued by mistake, it is neither valid nor invalid insurance within the meaning of the policy clause relating to additional insurance, without notice to the company. Such insurance, issued by mistake, is no insurance at all.

AUTHORITIES CITED.

Phoenix Ins. Co. v. Spears, 87 Ky. 285; Rogers v. Farmers' Co., 20 R. 1925; May on Insurance, page 754; Sun Mutual Co. v. Crist, 19 R. 305; Citizen's Co. v. Crist, 19 22 R. 47; Germanio Co., v. Wingfield, 22 R. 455; Crawford v. Travelers Co., 30 R. 943; Idem. (2d appeal) 32 R. 517; Gragg v. Home Co., 32 R. 988; Wilson v. Queen Co., 5 Fed. Rep. 647; Parks v. Hartford Co., (Mo.) 12 S. W. 1058; London, etc., v. Turnbull, 86 Ky. 230.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

Appellee, Eugene Robertson, instituted this action against appellant, North British & Mercantile Insurance Company, to recover the sum of $2,500. The jury returned a verdict in favor of appellee, and from the judgment based thereon the North British & Mercantile Insurance Company appeals.

Among the conditions contained in the policy is the following:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy." On the policy was the following indorsement: "$15,000.00 total concurrent insurance permitted on stock." At the time of the fire, which occurred on the 10th day of March, 1907, and at the time the adjuster was called to adjust the loss, there were policies of insurance on the stock of goods in the Phoenix, Hartford, Firemen's Fund, and other insurance companies, amounting to $20,800.

Appellant's defense to the action was based on the fact that the policy allowed only total concurrent insurance in the sum of $15,000, while, as a matter of fact, appellee had insurance on his stock of merchan-

dise amounting to $20,800. To overcome this defense
the appellee pleaded knowledge on the part of the com-
pany's agent, and of the company, of additional in-
surance amounting to $17,300. As to the other insur-
ance in excess of the $15,000, to wit, $3,500, appellee
pleaded that at the time of the destruction of his
property there was in his possession a policy pur-
porting to have been issued to him by the American
Central Insurance Company of St. Louis for $2,500,
which policy was dated December 30, 1906, and was
to expire December 30, 1907; that said policy was not
issued to him at his instance or request, and that he
did not know that he had any such policy of insur-
ance covering his property until after the fire of
March 10, 1907; that it was issued by mistake of
the local agent of the American Central Insurance
Company at Adairville; that he never at any time
requested said agent to issue said policy, and that it
was issued by mistake and was never in fact in exist-
ence as a contract between the plaintiff and the Amer-
ican Central Insurance Company; that the policy had
been returned to said company and the amount of
the premium thereon, to wit, $41.25, had been re-
funded to him. Appellee also pleaded that a certain
policy, No. 1086, which had been issued to him by the
Phoenix Insurance Company on February 6, 1907,
purported to insure his property in the sum of $2,000,
when, as a matter of fact, it should have provided for
insurance on said property in his favor in the amount
of $1,000 only; that, by mistake of the local agent at
Adairville, said policy was written for $2,000 when it
ought to have been written for $1,000; that in set-
tling his claim against the Phœnix Insurance Com-
pany, said policy, No. 1086, was treated by appellee

and said insurance company as a policy for $1,000, instead of a policy for $2,000.

Both appellee and appellant's local agent, M. L. Fugate, swear that the latter at the time the policy herein sued on was issued knew that appellee had $17,300 insurance, including the policy herein sued on. Upon this point there is no evidence to the contrary. Appellant insists, however, that we should now depart from the rule laid down in the case of Phoenix Insurance Company v. Spiers & Thomas, 87 Ky. 285, 8 S. W. 453, 10 Ky. Law Rep. 254, wherein this court laid down the rule that, where a policy of insurance provides for a forfeiture in case of additional insurance without the written consent of the company indorsed upon the policy, the condition may be waived, either by parol agreement or by the conduct of the company; and silence for an unreasonable time upon the part of the company, after knowledge or notice of the breach of the condition, will constitute such conduct.

We see no good reason, however, why the rule above announced should be departed from. It has been followed in a number of cases by this court. The doctrine is not only well settled, but in our opinion is based upon sound reasoning. Where the company's agent leads the insured to believe that the company will not insist upon the forfeiture under the additional insurance clause and accepts the premium which the insured pays, it would not be equitable or just to permit the company thereafter to avail itself of such forfeiture when such action would lead to the injury of the insured who was misled by the company's representative. For authorities in point, see Rogers v. Farmers Co., 106 Ky. 371, 50 S. W. 543, 20 Ky. Law Rep. 1925; May on Insurance, p. 754;

Sun Mutual Co. v. Crist, 39 S. W. 837, 19 Ky. Law
Rep. 305; Citizens' Co. v. Crist, 56 S. W. 658, 22 Ky.
Law Rep. 47; Germania Insurance Co. v. Wing-
field, 57 S. W. 456, 22 Ky. Law Rep. 455; Gragg v.
Home Insurance Co., 107 S. W. 321, 32 Ky. Law Rep.
988.

The evidence as to the American Central Insurance
Company policy of $2,500 is as follows: The policy
bore date December 30, 1906, and expired December
30, 1907. The policy herein sued on bore the same
date and expired the same date. E. R. Moore was
the local agent for the American Central. M. L. Fu-
gate was appellant's local agent. Appellee had large
property and carried many insurance policies. They
were kept in the bank, of which M. L. Fugate was
cashier. Robertson did not know the names of the
companies, the respective amounts of the policies, or
how they were divided between building, stock, and
fixtures. M. L. Fugate was Robertson's banker, and
E. R. Moore was a patron of his store. These two
agents were continuously soliciting Robertson for in-
surance business. Some time in 1905 or 1906, Rob-
ertson concluded to divide his insurance between
these two agents and to give Moore an increase. The
policy herein sued on is an old policy. Some time in
1906 Robertson, knowing this policy was to expire,
gave Moore the date of the expiration of the policy,
and instructed him to write a policy for $2,500 in one
of his companies when the North British & Mercan-
tile Insurance Company policy expired. Moore then
made a note of the expiration of the latter policy, and
on December 30, 1906, wrote $2,500 of insurance for
Robertson in the American Central Insurance Com-
pany. In the meantime Robertson had been inter-
viewed by Fugate, and at the latter's solicitation

agreed to change his plans and allow Fugate to keep
the business and to renew the North British policy
on December 30, 1906.   Accordingly Fugate did re-
new it and Moore wrote the same insurance in the
American Central.   In December, 1906, after he had
agreed to let Fugate retain the insurance, Robertson
sent one of his clerks to E. R. Moore with instructions
not to write the policy in the American Central.   The
clerk corroborates Robertson's testimony on this
point, and says he delivered the message to Moore.
The latter had no remembrance of receiving any such
instructions, but wrote the insurance.   The policy in
the American Central was delivered to Robertson and
the premium thereon paid, partly in cash and partly
by merchandise obtained at Robertson's store.   Fu-
gate also delivered the policy herein sued on and col-
lected the premium thereon. Robertson took both pol-
icies at separate times, and, placing them in his
pocket, took them to the bank, and had them deposited
in his box there.   He did not read or examine
them.   Both   Fugate   and   Moore   had   instruc-
tions from Robertson to watch the expirations, and to
renew the various policies when they expired.   This
they had done for years.   From time to time they
would present new policies to Robertson and collect
for them.   When Moore presented the American Cen-
tral policy, Robertson merely supposed it was some
such renewal and acted accordingly.   He never col-
lected, or attempted to collect, on the American Cen-
tral policy, and surrendered it when he discovered
the mistake.

As to the Phoenix policy, No. 1086, issued for
$2,000, the evidence is as follows: This policy was
dated February 6, 1907.   Robertson says it should
have been for $1,000.   About that time E. R. Moore

was carrying for Robertson a $2,000 policy in the Phoenix and a $1,000 policy in the Aetna. Robertson claims that he telephoned Moore before the date of the expiration of the Phoenix policy that he had agreed to let Fugate have that $2,000 policy. He thereupon instructed Moore to renew the $1,000 policy in the Aetna, and let the $2,000 policy lapse. Accordingly, on February 6, 1907, date on which the Phoenix policy expired, Fugate wrote a $2,000 policy in the Firemen's Fund Company. Moore, instead of allowing the $2,000 policy to lapse and renewing the $1,000 policy, did the very reverse. Moore testified that he had the two policies—one for $2,000 and one for $1,000—referred to by Robertson; that Robertson telephoned him to let one lapse and renew the other. His recollection was that Robertson told him to renew the $2,000 policy and let the $1,000 policy lapse; that was the way he understood the message, but it was not impossible that Robertson told him to renew the $1,000 policy and let the $2,000 policy lapse.

Several insurance adjusters, who had been sent to Adairville by their respective companies to adjust the loss, testified that they asked appellee for the policies of insurance he was claiming under, and he exhibited to them insurance policies amounting to $20,800. Among them were the two policies, the one in the American Central for $2,500 and the other in the Phoenix for $2,000. They asked him how he happened to exceed the amount of insurance permitted, and he answered that he did not know he had exceeded it. At that time he made no mention of the fact of any mistake in regard to either the Phoenix or American Central policies. Robertson, on the contrary, testified that they merely asked him for his

policies, and he exhibited the same without making any mention in regard to them.

It is insisted by appellant that it was entitled to a peremptory instruction so far as additional insurance was represented by the American Central and Phoenix policies, because the proof shows that Robertson actually had these policies in his possession and paid the premiums thereon, and that he made no claim of any mistake therein until the fact developed that he was carrying more insurance than the policy in question permitted. In view, however, of the explanation made by Robertson and of the circumstances attending the issual of the two policies, we are unable to say as a matter of law that his acceptance of the policies and payment of the premium thereon conclusively establishes the point that the policies were actually in force at the time the policy herein sued on was written. Upon this question there was a sharp issue of fact. There are many circumstances tending to corroborate Mr. Robertson's statement. The probability or improbability of his story was a question for the jury. Being unable to say that their finding was flagrantly against the evidence, we can not disturb it on the ground of insufficient evidence.

It is next insisted that the additional insurance clause provided that the policy should be void if the insured then had, or should thereafter make or procure any other contract of insurance, whether valid or not, and, even if the policies in the Phoenix and American Central companies were not valid, this fact invalidated the policy sued on. In other words, appellant's contention is that the two policies referred to were either valid or invalid, and that in either event the North British policy was rendered void.

Our conclusion, however, is that if the two policies constituting the additional insurance were not authorized by Robertson to be issued, and were issued by mistake, and he did not claim any rights thereunder or seek to enforce their collection, they were neither valid nor invalid insurance, they were in effect no insurance at all, and their mere formal existence as policies did not render void the policy sued on.

For the reasons given, the judgment is affirmed.