## Glens Falls Insurance Company v. Jacobs.

(Decided February 8, 1929.)

HARMAN, FRANCIS & HOBSON for appellant.

JOHNSON & HINTON for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

The Glens Falls Insurance Company seeks by this appeal to reverse a $700 judgment recovered against it by C. D. Jacobs. Some time about the last of August, 1925, Mr. O. T. Hinton sold to C. D. Jacobs a Nash automobile for the Cumberland Supply Company, and as part payment for the automobile, on September 2, 1925, Jacobs executed to the Cumberland Supply Company a conditional sales contract or mortgage for $368, which Jacobs undertook to pay in eight monthly installments of $46 each. The mortgage was at once assigned to the Central Acceptance Corporation of Cincinnati, Ohio, hereafter referred to as the finance company. In this mortgage there is this provision: "Mortgagor shall keep said motor vehicle insured against fire and theft for whom it may concern for not less than the total of the above installments until all amounts due thereunder are paid." Shortly after he sold this car to Jacobs, Hinton called on the insurance agency of Francis, Francis & Trivette, agents of the Glens Falls Insurance Company, and took up with their Mr. John S. Miller the insurance of this automobile. Hinton says: "I told Miller that Jacobs was paying around $900.00 for the car, and would need about $350.00, as I recall it, to finance the proposition, and in order to do that, he was putting it through the usual commercial channels, executing a conditional sales contract payable in installments, and Mr. Miller said that was 'all right' and the policy was issued." Miller denies this. The date of this Glens Falls policy is August 26, 1925, but it was probably written on or after September 2 and dated back; at least, it so appears from the evidence.

This automobile was destroyed by fire on November 11, 1925, and after the fire the Glens Falls Insurance Company learned that this machine was also insured in the Commercial Mutual Insurance Company for $560 and that a policy for that amount payable to C. D. Jacobs and the Central Acceptance Corporation of Cincinnati had been issued on September 2, 1925, and delivered to the

Cincinnati concern. When Jacobs sued on this insurance policy, the Glens Falls Insurance Company resisted payment, and has based its defense upon these clauses contained in the policy:

> "The automobile described is fully paid for by the Assured and is not mortgaged or otherwise encumbered."
>
> "Unless otherwise provided by agreement in writing added hereto, this Company shall not be liable for loss or damage to any property insured hereunder, while encumbered by any lien or mortgage."
>
> "No recovery shall be had under this policy, if at the time a loss occurs there be any other insurance covering such loss, which would attach if this insurance had not been effected."

Nothing written in the policy or attached thereto indicates the Glens Falls Insurance Company had any notice of any incumbrance on this automobile, or any other insurance on it. On the contrary, the policy plainly shows the Glens Falls Insurance Company understood the automobile was not incumbered, and was fully paid for, and it expressly contracted against other insurance on it. Mr. Miller, by whom the Glens Falls policy was written, testified positively that he knew nothing of any mortgage or incumbrance on the property or of any other insurance thereon.

The record clearly indicates that Hinton and Jacobs both knew and understood that there was included, in the mortgage given, a premium with which the finance company would procure insurance on this automobile to protect their interests. It shows with equal clearness that Hinton and Jacobs preferred to procure the insurance locally, rather than to have it procured by the finance company. The Glens Falls policy was procured, and Jacobs, according to the testimony of Hinton, finally obtained on his conditional sales contract a rebate for the insurance premium that had been included in it. Jacobs did not have the Glens Falls policy made payable to the finance company in any way, did not offer to deposit it with the finance company, or even tell it he had insurance on this automobile; and, in the absence of these things, the finance company did the thing one would expect it to do—it procured a policy of insurance on this automobile. The policy so procured is written in the

name of Mr. Jacobs, and purports to protect him just as much as it does the finance company. Jacobs has made a claim and proof of loss for $494 upon that policy, as well as proof of loss for $700 on the policy in litigation here. Why the proof of loss on the Commercial Mutual Insurance policy was made for $494, instead of $560, does not appear, and we are unable to surmise. In his pleading he says he knew nothing of this Commercial Mutual policy until after the fire, and denies that he has demanded of the Commercial Mutual Insurance Company $494 or any other sum, except under the following circumstances:

"Plaintiff says that the defendant, through its duly authorized agent and representative, informed him that the aforesaid insurance with the Commercial Mutual Insurance Company had been effected and requested the plaintiff to execute a proof of loss, which was submitted and prepared by the said Commercial Insurance Company in order that the defendant might request a contribution from said Commercial Mutual Insurance Company, and with the understanding and under the express agreement that the defendant would settle the loss with this plaintiff under the policy sued on, and that said proof of loss and demand was made for that and no other purpose."

"Plaintiff further says that the Commercial Mutual Insurance Company, incorporated, is not authorized to engage in the insurance business in the State of Kentucky, and was not authorized to issue any policy of insurance on the plaintiff's automobile in the plaintiff's name, and that by reason of this fact and the further fact that the said insurance was procured and issued without the knowledge and consent of this plaintiff, that there was, in fact and in law, and within the meaning of the contract of insurance sued on, no 'other insurance,' on said automobile at the time the policy sued on was issued or at the time of the aforesaid fire, or at any other time."

These affirmative allegations were by consent controverted of record. In his evidence, Jacobs says he only made proof of loss under that policy at the instance and request of the adjuster for the Glens Falls Insurance Company; but the adjuster most positively denies this. Jacobs in his testimony said he did not know of the policy of insurance written on this automobile, by the Commer-

cial Mutual Insurance Company; but admitted making proof of loss on that policy after filing this suit. He would not say in his testimony whether he was claiming anything on that policy or not, and, when he was asked the direct question if he was claiming anything under that policy, he objected to the question, and the court sustained the objection.

The failure of the court to require Jacobs to answer this question is the first ground for reversal relied on by the Glens Falls Insurance Company. As it is conclusively shown Jacobs knew nothing of the insurance written on this automobile by the Commercial Mutual Insurance Company until after the fire, it was not such "other insurance" as was forbidden by the policy issued by the Glens Falls, unless Jacobs ratified the contract in the Commercial Mutual Insurance Company after the fire. North British & Mercantile Ins. Co. v. Robertson, 134 Ky. 529, 121 S. W. 633; Home Ins. Co. v. Koob, 113 Ky. 360, 68 S. W. 453, 24 Ky. Law Rep. 223, 58 L. R. A. 58, 101 Am. St. Rep. 354; McKelvy v. German-American Ins. Co., 161 Pa. 279, 28 A. 1115; German Ins. Co. v. Emporia Mut. L. & S. Ass'n, 9 Kan. App. 803, 59 P. 1093; Hughes v. Ins. Co. of North America, 40 Neb. 626, 59 N. W. 112. No question of ratification appears in the two domestic cases cited, but in the McKelvy case, the court held the insured was bound, in good faith, upon the discovery of the double insurance, to at once reveal the existence of such other policy to his insurer, and to unequivocally disclaim any benefit thereof; and in the other two cases cited recovery was denied because, after the fire, the insured had ratified the double insurance by making proof of loss under the second policies and collecting thereon.

This issue of ratification was not well developed by the pleadings in the case before us, but we think it was sufficiently so that Jacobs should have been required to answer this question, and if the Glens Falls Insurance Company had made an avowal that the answer of Jacobs would have been that he had proven his loss under the Commercial Mutual Insurance Company with the object of collecting it, and was expecting and endeavoring to collect it, then a right serious question would be presented, but in the absence of an avowal showing what the answer of the witness would have been, we cannot tell whether this was prejudicial error or not, for to reverse a judgment there must affirmatively appear some error prejudicial to the party complaining. If Jacobs' answer

·had been, "No," it would have been beneficial to his interests in this case. If his answer had been in the affirmative, as above stated, then it would have been beneficial to the insurance company; but, in the absence of any avowal as to what his answer would have been, we cannot tell who would have been benefited by it and are unable to say that the substantial rights of the Glens Falls Insurance Company were prejudiced by the action of the court in declining to require Jacobs to answer.

The insurance agency of the Glens Falls, through which this policy was issued, was a general or recording agency, as defined in Staples v. Continental Fire Ins. Co., 223 Ky. 842, 5 S. W. (2d) 265, and the authorities are uniform and unanimous in holding that where the insured discloses to such an agent the existence of a mortgage on the property which would invalidate the contract from its very inception, and that subsequent to such disclosure the policy is issued, it is a waiver of any conditions in the contract inconsistent with those known facts. See 14 R. C. L. 1166, sec. 346, and 26 C. J. 296, sec. 368. The evidence for Jacobs is that Mr. Miller, of the Glens Falls agency, which issued this policy, was fully advised of the mortgage on this machine, while the evidence for the insurance company was that it was not so advised, and that question was submitted to the jury under an appropriate instruction.

The defendant offered three instructions, which the court declined to give. We have examined them very carefully, and we are unable to say that the issues the defendant sought to have submitted by those instructions were not fully and correctly submitted by the instructions given.

The judgment is affirmed.

The whole court sitting.