**LINCOLN COUNTY MUT. FIRE INS. CO.
v. SMITH.**

No. 15150.

Court of Civil Appeals of Texas.
Fort Worth.

June 30, 1950.

Rehearing Denied Sept. 15, 1950.

Chaney & Davenport, Dallas, for appellant.

Brantley Pringle, Fort Worth, for appellee.

McDONALD, Chief Justice.

On May 17, 1949, certain low-lying areas in the City of Fort Worth were inundated by flood waters. Appellee owned and resided in a small house in the flooded area. There was in force at the time a policy of fire insurance issued by appellant insuring the house to the extent of $1,000 and the household goods to the extent of $500. Shortly after six o'clock on that morning, after appellee and his family had fled to higher ground to escape the flood waters, several persons who were standing on the levee nearby saw appellee's house afire. They observed the house burning for some time, but all of them left the area before the fire had terminated. Those who testified said that at the time they left the area most of the house was aflame, and one of them saw the roof fall in before he left. At that time the water was about three feet deep in the vicinity of appellee's house. If any part of the house remained after the fire, it was washed away by the flood waters, which later reached a depth of more than twenty feet at this point. Only four items of the household goods were ever found, a cooking range, a stove, an electric refrigerator, and a shotgun. All of them, from their appearance, had been damaged beyond repair by the fire. Some trees near the house were scorched or burned, and one of them later died.

Appellant denied liability on the policy on the ground that the flood, and not the fire, caused the loss, and this suit followed. Appellee recovered judgment on a favorable jury verdict for the full amount of the policy, and appellant has appealed, relying on four points of error.

The gist of the contention made under the first point is that the undisputed evidence showed that the flood, which was a peril not insured against, was an inconsistent concurring cause of appellee's loss, that there was no testimony to show how much damage was done by the fire and how much damage was done by the flood, that the burden of proof was on appellee to show the amount of damage resulting solely from the fire, that he failed to discharge this burden, and that it was therefore error to render judgment on the policy.

The burden rests generally upon an insured to prove that his loss resulted from the peril insured against, and where the proof shows that a part of his loss resulted from a peril insured against and a part from a peril not insured against, the burden is upon the insured to show the amount of loss which resulted from the peril insured against. American Ins. Co. of City of Newark, N. J., v. Maddox, Tex. Civ.App., 60 S.W.2d 1074; Coyle v. Palatine Ins. Co., Tex.Com.App., 222 S.W. 973.

The case was submitted to the jury on four special issues, which inquired respectively whether there was direct loss to the house resulting from fire, whether such loss was total, whether there was a direct loss to the household goods resulting from fire, and as to the amount of the latter loss. The definition of total loss contained in the court's charge, which is not complained of here and which appears to be in harmony with the pronouncements in such cases as Phœnix Assur. Co. of London v. Stobaugh, 127 Tex. 308, 94 S.W. 2d 428, 429, was as follows: "By [the term] 'total loss' [as used in this charge] is meant such destruction of a building as that, after the fire, there remains standing in place

no substantial remnant thereof which a reasonably prudent owner, uninsured, desiring to restore the building to its original condition, would utilize as a basis of such restoration."

 There is no substantial dispute in the testimony of the witnesses who saw the fire. They saw the house in full flame, and at least one of them saw the roof fall in. The house was a small four room house of box type construction, and although all of the witnesses left the scene before the fire had ceased to burn, the direct evidence, considered in the light of common knowledge, forbids an inference that the fire could have ceased to burn until the house was a total loss unless the fire was extinguished by the flood waters. According to all the evidence, the water was about three feet deep at the time of the fire. The floor was about eighteen inches above the ground, so the water must have been about eighteen inches deep in the house. Assuming that the water extinguished the fire when it reached the water level, there may have remained standing in place when the fire was extinguished the floor, which rested on concrete blocks, and as much as eighteen inches of the walls. In order to constitute a total loss within the meaning of the policy, "it is not necessary that all the materials entering into the building be absolutely and physically destroyed", but "there can be no total loss of a building so long as a substantial remnant of the structure, standing in place, is reasonably adapted for use as a basis upon which to restore the building to the condition in which it was before the injury, and whether it is so adapted depends upon whether a reasonably prudent owner, uninsured, desiring such a structure as the one in question was before the injury, would, in proceeding to restore the building to its original condition, utilize such remnant as such basis." Fire Ass'n of Philadelphia v. Strayhorn, Tex.Com.App., 211 S.W. 447, 448. Whether or not there was a total loss was an ultimate issue of fact. United States Fire Ins. Co. v. Boswell, Tex.Civ. App., 82 S.W.2d 176, writ dis. It is not material that the flood might have destroyed the house if there had been no fire,

nor is it material that the flood washed away the remnant, if there was a remnant left standing in place after the fire was extinguished. If such a remnant was not reasonably adaptable for use as a basis upon which to restore the building, within the rules declared in the Strayhorn case, supra, it does not matter that the flood washed the remnant away.

 Although no witness testified whether or not such a remnant would have been adaptable as a basis for rebuilding, we are inclined to think and so hold that the jury could properly resort to their common knowledge and experience in determining the question. In Simmonds v. St. Louis, B. & M. Ry. Co., 127 Tex. 23, 91 S.W.2d 332, 335, the only witness on value testified that a mule was worth $190. The jury found that the mule was worth $97.50. In holding that the jury's finding was not without evidence to support it, the court observed that there was no evidence as to the size, age, disposition, or other characteristics of the mule to aid the jury, and said that the jury's problem was "simply to find the value of an ordinary gray mule." The court went on to say that the subject was not one for experts, but was one about which a jury might be assumed to have, or be able to form, correct opinions of their own, and that in arriving at their verdict they should be influenced by their own "common sense, experience, and knowledge of the subject." It is our belief that there was sufficient evidence in the record from which the jury could find, taking into consideration their own common sense, experience, and knowledge of the subject matter, that the fire caused a total loss of the house as that term was defined in the court's charge.

 As to the household goods, the most that could be inferred from the evidence in appellant's favor is that the furniture was standing in eighteen inches of water when the flaming roof fell in. There was evidence, not disputed, that the household effects were of the aggregate value of at least three times the amount of the insurance. The only objects found after the flood were damaged beyond repair by the fire. The evidence supports the finding of

$775 damage to the household effects. Judgment as to this item was for $500, the amount of the policy.

The first point of error is overruled.

■ The second point of error reads as follows: "The error of the Court in rendering a judgment for Plaintiff suing upon a fire insurance policy where the undisputed evidence shows that there was an inconsistent concurring uninsured peril causing Plaintiff's loss and the Court failed to submit any issue as to whether Plaintiff's loss resulted solely from the peril insured against or as to the amount of damage thus resulting, the burden of proving such loss being upon the Plaintiff to obtain such a finding from the jury in order to recover on the contract sued upon, Plaintiff's failure to request a submission of issues in such regard being a waiver of a fundamental ground of recovery."

We overrule the contention raised under this point. The first special issue inquired whether appellee suffered a direct loss resulting from fire, the second whether "such loss, if any, as you may have found in answer to the preceding question" was a total loss. We have not been cited to any decision, nor have we found any, in support of appellant's contention that the court should have inquired whether the loss resulted "solely" from the fire, rather than directly from the fire. We hold that the verdict is sufficient to support the judgment, both as to loss of the house and as to loss of the household goods.

■ Point three complains of the refusal of the court to submit two special issues, one of them inquiring whether the high water inundating the area where appellee's house stood was the proximate cause of the loss of appellee's house, the other inquiring whether the high water was the proximate cause of the loss of the household goods. We are not able to see how the jury could have answered either of these issues favorably to appellant under the evidence in the record. There might have been evidence sufficient to show that the high water caused part of the loss, but reasonable minds cannot differ about the fact that the fire caused at least a great part of the loss to both house and household goods. As we interpret these two issues, they do not inquire whether the high water caused a part of the loss, or contributed to the loss, but they inquire whether the high water caused the loss of the house and the household goods, which must mean nothing less than the entire loss of the house and household goods. Appellant's pleadings did not allege that the high water contributed to the loss or caused part of the loss, but alleged in plain terms that the water caused the loss and that appellee suffered no direct loss due to fire. The two requested issues just described presented the defense made by the pleadings, but under no reasonable interpretation of the evidence could the jury properly have found that the high water caused the loss. Other issues were requested and refused which did inquire whether the fire caused a partial as distinguished from a total loss, but no reversible error is presented in the refusal of the partial loss issues for two reasons. First, appellant did not plead that the fire caused a partial loss as distinguished from a total loss. Rule 279, Texas Rules of Civil Procedure; Texas Employers' Ins. Ass'n v. Tate, Tex. Civ.App., 214 S.W.2d 877, writ ref. n. r. e. Second, there is no point of error in appellant's brief complaining of the refusal of the court to submit the partial loss issues.

■ The fourth point complains of the refusal of the court to submit appellant's requested issues inquiring whether the high water was the "dominant efficient" cause of the loss to the house and household goods. Again, we have the problem which was presented under the third point. The requested issues did not inquire as to a partial loss caused by the flood, but only inquired as to the loss of the house and the loss of the household goods. The evidence would not have warranted an answer favorable to appellant.

Certain other special issues were also requested and refused, but no complaint is made with respect thereto under any point of error.

The judgment of the trial court is affirmed.