**E. L. CRUTCHFIELD et al., Appellants,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Appellee.**

No. 16083.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 26, 1960.

Rehearing Denied March 25, 1960.

Whiteside & Gandy, and John Whiteside, Fort Worth, for appellants.

Walker, Day & Harris, Joe Day, Jr., and Don E. Burdette, Fort Worth, for appellee.

MASSEY, Chief Justice.

This case has been before us on a former occasion. See 306 S.W.2d 948. Therein, judgment based on a verdict instructed for the defendant at the close of plaintiffs' testimony was reversed and remanded by reason, in part at least, of our conclusion that there were issues of fact to be resolved by the jury, and which, if resolved in favor of plaintiffs, would support a judgment in their behalf.

On such retrial special issues were submitted to the jury, in answer to which the jury found that fire had so damaged the property purportedly insured by the defendant company that it was a "total loss", and further, as of the time of the loss neither of the plaintiffs had knowledge of the existence of "other insurance" on the property, nor authorized the purchase of "other insurance", or ratified a policy affording "other insurance" either before or after the time the loss occurred.

After the return of such verdict the Insurance Company filed and presented its motion for judgment non obstante veredicto. The motion was granted and judgment was entered in behalf of the defendant and directing that the plaintiffs take nothing by their suit. The plaintiffs perfected an appeal.

Judgment reversed and rendered in behalf of plaintiffs and against the defendant.

As may be noted from our opinion on the prior appeal, it was E. L. Crutchfield, as principal, who was insured under the fire insurance policy of the defendant St. Paul Fire & Marine Insurance Company. In this policy J. W. Selman was named as the first mortgagee and J. W. Bing was named as the second mortgagee. Of course, under policy provisions, the proceeds thereof to be paid, in the event of a total loss, would be to each of the three, Crutchfield, Selman, and Bing, as "their interest may appear at time of loss".

Crutchfield had obtained possession of the property under and by virtue of a contract entered into by him with Bing on October 24, 1953. Prior to such date Bing had acquired the property from Selman in a transaction under which he had received a deed from Selman, and had himself executed a deed of trust securing a balance of indebtedness owed to Selman (and which indebtedness was being retired at the rate of $30 per month). Said deed of trust provided that Bing should protect the property in question by insurance, with a loss payable clause thereof protecting Selman. However, Bing did not procure any insurance on the property and Selman did not take any action by reason of Bing's failure in such respect. The property consisted of a three-room unfinished frame dwelling "sitting" on blocks, on a five-acre tract of land in the southern part of Tarrant County.

Failure of the plans in the mind of Bing at the time he acquired the property from Selman caused him to desire to dispose of it. He employed as his agent a Mr. Leddon, who was in the insurance and real estate business, and as a result of negotiations between such agent and Crutchfield, Bing entered into the contract of October 24, 1953. This was a contract of sale under which Bing sold and agreed to convey the property to Crutchfield, but providing that Bing would deliver his warranty deed

and title policy to Crutchfield "when total of $500.00 is paid on principal of purchase price". Under the contract Crutchfield assumed the obligation to pay the balance owing to Selman in the amount of approximately $1,970, secured by the first lien on the premises. Further, Crutchfield agreed to execute a second lien note "with Deed of Trust" for the difference of approximately $680 (which was to be paid to Bing) to be payable at $10 per month beginning one year from the date of the contract. Of course, Crutchfield had the right to make payments reducing such indebtedness at earlier dates.

Apparently no second lien note was ever executed by Crutchfield to Bing, nor any deed of trust to secure the same. An account sheet was opened by Leddon, however, and practice started by which Crutchfield made payments (to go to Selman and/or Bing) direct to Leddon, who kept account thereof through entries on the account sheet. There is no question but what Leddon was delivering to Selman the payments provided to be paid him, and there is no question but what part of the sums delivered to Leddon by Crutchfield, and intended by the latter to go to Bing, was actually delivered to Bing by Leddon. In other words, Crutchfield started making payments to Bing as well as to Selman. Any agency on the part of Leddon in connection with this activity would have been for Bing as the principal. Leddon was never the agent of Crutchfield.

The fire occurred on January 14, 1955, slightly less than fifteen months after the date of the contract of October 24, 1953. In the intervening period Crutchfield had moved his family into the house on the premises purchased, and had made permanent improvements thereon. Testimony in the record would support the sum of $1,800 in improvements. Crutchfield was a neighbor to the Selman family, and in a conversation with them discussed the matter of insuring the property. The Selmans told him that they were of the opinion that he was obligated to carry insurance on the property; that before the time of his purchase Bing was supposed to carry insurance on it, but that they had asked Bing about whether it was insured and he had told them that it was not. Subsequently, through an arrangement made by Crutchfield with an agent in Dallas, the policy of the St. Paul Fire & Marine Insurance Company was issued. A copy of the policy was mailed to Selman. The effective date of the policy was November 25, 1954. The amount of the policy was $4,000.

Unbeknown to either Crutchfield or Selman, Mr. Leddon had theretofore caused the issuance of another insurance policy covering the same property. The policy was for a three year period, beginning December 19, 1953, in the total amount of $2,000. The "insured" was named as J. W. Bing, with a "loss payable" clause protecting the Selmans "as their interest may appear at time of loss". Attached to the policy, and bearing the same date as the policy, was Texas Form No. 175, "Sale Contract Clause", providing that the property insured by the policy had been contracted to be sold to Crutchfield, title remaining in Bing until contract requirements had been complied with; and any loss under the policy should be payable to both Bing and Crutchfield. After the date of the policy, but prior to date of the fire, either the original or a copy of this policy was delivered to Bing. Bing's testimony was to the effect that he did not order nor authorize the issuance of the policy, and that he assumed that Crutchfield had ordered it. Crutchfield testified that about the time he went into possession of the premises Leddon wanted authority from him to write such a policy of insurance, but that he told Leddon that if he got insurance he would get it from an agent of his acquaintance in Dallas, Texas. Mr. Leddon did not testify.

The only evidence in the record about the matter is to the effect that Leddon's act in issuing the policy was an unauthorized and voluntary act on his part, known only to himself at the time, though later known

to Bing. Furthermore, other testimony in the record discloses that following the fire, and after being apprised of the existence of such policy, both Crutchfield and Selman disavowed any right, title or interest in and to it and refused to make any claim under it, etc. In so far as he was empowered to do so, however, Bing ratified the policy issued by Leddon. He signed and submitted proof of loss (on account of the fire) to the company insuring the subject property, and received as payment from said company (on account of the loss by fire) the sum of $1,589.50. Furthermore, the evidence shows that he received the sum of $26.58, in addition, from the same company as a return of the unearned premium of the policy upon cancellation thereof, incident to the payment of the first amount stated for the loss sustained.

The only evidence in the record concerning such is to the effect that no part of the $26.58 "return premium" was ever returned or offered to Crutchfield, although it is undisputed in the record that Mr. Leddon had charged the cost of the policy to him. At least such appears from the ledger account sheet kept by Leddon. In other words, it is established by and for purposes of the record that money paid by Crutchfield, to Leddon as agent for the collection of money for Bing,—to be wholly credited upon the amount owed Bing,—was in part applied upon the purchase price of an insurance policy to which he had not consented and of which he had no knowledge.

As previously noticed, a fire occurred on January 14, 1955. It was the contention of the St. Paul Fire & Marine Insurance Company that the loss was partial. Apparently Bing agreed that it was partial. It was the contention of Crutchfield and Selman that the loss was total. As a matter of interest, it was the contention of the Insurance Company whose policy Mr. Leddon had issued that the loss was partial.

Now, as of the time the loss occurred, Bing's interest in the subject property, as security, would be no greater than the amount (principal plus interest) owed him by Crutchfield. From the record it is apparent that such interest could have been no greater than the amount of $600. The matter of establishing an exact figure was not tried out in the trial court, but on the appeal Crutchfield and Selman concede that the figure may be treated as exactly $600, and waive any right to collect the final $600 otherwise owed. If the proper disposition of the case on appeal is to render judgment for Crutchfield and Selman against the St. Paul Fire & Marine Insurance Company, the judgment would be for $3,400 ($4,000 less $600), said amount properly representing—as of the time of the total fire loss—the total of the amount of the interest of Selman and Crutchfield. Otherwise stated, the interest of Bing in the insured property as of the date of the loss by fire being calculable as the sum of $600, the interest of all others in the same property would be reduced by said amount.

Immediately subsequent to the time of the fire a rather pronounced difference of agreement arose between Bing and Crutchfield. This difference involved the right to title and possession of the subject property, what was the proper amount owing by Crutchfield to Bing as complete contractual performance by the former in establishing his right to have a deed delivered to him, etc. Involved also in the argument was the matter of which policy of insurance was the proper one under which to make claim for benefits, and whether the amount to be collected should be on the premise that it was a partial loss or a total loss which had occurred. Bing took the position that the loss was partial and that claim should be made of the company whose policy Leddon had issued. Crutchfield, joined by Selman, took the contrary position.

Culmination of such disagreement resolved itself into a suit in trespass to try title to real estate between Crutchfield and Bing, with joinder in such suit of the action by Crutchfield and Selman against the St.

Paul Fire & Marine Insurance Company for total loss.

In further complication of circumstances Bing executed a proof of loss for $1,589.50 to the company whose policy Leddon had issued. Such company paid him said amount,—coupled with (and no doubt conditioned upon) the repair of the subject property as though the loss thereto was less than total for the draft of said company included as a payee the contractor who was "awarded" the contract to repair the damage by Bing. Repairs were instituted and proceeded over the protest of Crutchfield, and indeed it appears that at one stage the workmen were caused to stop activity for a period of a few days because of a threatened injunction. After such delay the workmen returned to the premises and completed the job undertaken. There is no explanation of such return, but it was not with the consent of Crutchfield.

The dispute between Bing and Crutchfield persisted for some time. Ultimately they reached an agreement in disposition of their dispute. It was agreed that Crutchfield and Selman would sever the building from the land, Bing would take the same and move it off the land as his personal property, and, in consideration thereof, he would deed to Crutchfield all his interest in and to the premises without reservation, leaving title thereto wholly in Crutchfield, save for the burden of Selman's first lien. This agreement was consummated. Afterward, the pleadings of the pending suit were so altered that it merely constituted an action by Crutchfield and Selman against the St. Paul Fire & Marine Insurance Company for total loss under its policy. The Company contended that only the company whose policy was issued by Mr. Leddon provided valid and effective insurance on the subject property, and that the policy issued by the St. Paul Fire & Marine Insurance Company never became effective (so as to afford insurance coverage on the property described therein), because of a provision in its policy, made a condition thereof, that it should have no liability thereunder if there was at the same time other fire insurance on the identical property.

As applied to a question of coverage, such as here presented, we see no distinction to be made between a policy of fire insurance on an automobile and a policy of fire insurance on a building. More has been written concerning complicated fact situations where the property insured was personal property, as in the case of an automobile, than where the property is a structure on realty. See 76 A.L.R. 1174, Annotation "Automobile insurance: policy obtained by mortgagee or conditional vendor of car as other or additional insurance within clause against such insurance in policy obtained by mortgagor or conditional vendee and vice versa." It is to be observed from the cases under the annotation title that it is generally established that an insurance policy obtained by and issued to a mortgagee or conditional vendor of a car, though covering the interest of the mortgagor or conditional vendee as well as his or its own interest, without the knowledge and consent of said mortgagor or conditional vendee, is not such "other insurance" as will, under a clause against other insurance, avoid a policy obtained by the latter, covering his own interest in the car. (The qualification occasioned when there is a subsequent ratification by the mortgagor or conditional vendee is to be noticed.)

From the language of the cases annotated, the text by the annotator, and the cases of Commonwealth Ins. Co. v. Evans, Tex.Civ.App., Austin, 1931, 42 S.W.2d 1088, error refused; Home Ins. Co. v. Collins, Tex.Civ.App., Dallas 1932, 55 S.W.2d 898, error refused; and language from other cases to be found in 22 Tex.Dig., Insurance, ☜ 336(2) "Additional insurance; Knowledge and consent of insured",—it would seem that where a conditional vendor or mortgagee enters into a contract with an insurer whereby the latter insures the interest of the conditional vendee or mortgagor as well as that of the vendor—without there

being existent any agency for vendee on the part of the vendor, nor any knowledge thereof and consent on the part of the vendee, it would be unreasonable to hold that such contract of insurance violated a provision against "other insurance" (including insurance procured without company permission in excess of the amount insured by said policy) in a policy covering the same property but procured by the vendee—so as to make it worthless in the vendee's hands. We are convinced that the principle announced is sound and is the law in this state as applied to insurance on buildings as well as on automobiles.

If we disregard the fact that Bing did not authorize Leddon to issue the policy in question, and assume for a hypothesis that he ordered the same, we would have exactly the fact situation considered in the paragraph next preceding, i. e., a case where a conditional vendor or mortgagee (Bing) entered into a contract with an insurer whereby the insurer insured the interest of the conditional vendee or mortgagor (Crutchfield) as well as that of the vendor (Bing) without any agency right of the latter to do so. Furthermore, there would be no knowledge on the part of Crutchfield that Bing had procured the issuance of such a policy. It is the contention of the St. Paul Fire & Marine Insurance Company under this hypothesis that no liability on its part, under the policy it issued, ever came into existence—and that it was worthless in Crutchfield's hands from the time he procured it though he was without knowledge that Bing had procured the other policy. As we have stated, we believe the weight of authority is to the contrary of this contention.

■ It is to be remembered that the foregoing is a hypothesis, and that in fact the issuance of the policy by Mr. Leddon was not initially the act of Bing. Bing had not authorized Leddon's act and only learned of it later. In so far as it was within his power, he did ratify the policy after the fire. Of course, the rights of the several parties, under the policy of the St. Paul Fire &

Marine Insurance Company, became fixed by the occurrence of the loss, and as of that time. Though one may ratify the unauthorized issuance of a policy of insurance even after a loss has occurred, such ratification would necessarily be limited in scope and could not be considered to have operated to adversely affect the interest appertaining to the property which constituted property rights in other persons. 29 Am.Jur., p. 572 (29A Am.Jur., p. 150, sec. 956) "Insurance", sec. 740 "Ratification of Unauthorized Policy by Insured". Since Bing's "interest" in the property could have been no greater than the indebtedness due him, $600, and since Crutchfield and Selman have waived any right to contend that it was less than such amount, we believe that the "ratification" of the Leddon policy by Bing could have benefitted the St. Paul Fire & Marine Insurance Company only by way of reducing the amount for which judgment should be properly entered against it. Indeed but for the waiver there is some doubt that the state of the evidence and record would entitle the insurance company to such amount by way of a "credit".

The defendant places great reliance upon the recent case of American Insurance Company v. Kelley, 1959, Tex., 325 S.W.2d 370, in its contention that the insurance policy issued by Leddon was valid because it was prior in time to that of the defendant and was still in effect on date of the loss, but that defendant's policy never had any validity because it was issued on a date subsequent to that of such other policy. We think the instant case is to be distinguished from the Kelley case. Here we have under consideration a policy of insurance secured by plaintiff which is sought to be avoided for the reason (simplified) that a mortgagee (constructive) bought another policy on the same property without knowledge of the plaintiff. In the Kelley case the Supreme Court had under consideration a policy of insurance secured by a plaintiff which was sought to be avoided because the identical plaintiff subsequently bought another policy of in-

surance on the same property because of an honest (though mistaken) belief that the policy initially purchased was valueless. It is true that the opinion in the Kelley case cites an authority upon which we rely here, Home Insurance Co. v. Collins, supra, but it is cited for the proposition that there could have been no increase in the moral hazard incident to excessive insurance where the insured was not aware of the existence of a second policy, and hence, if the reason for policy provisions against liability are non existent such provisions ought to become ineffective.

■ Not disposed of by what we have already said are the contentions advanced by the St. Paul Fire & Marine Insurance Company that the demand of Crutchfield and Selman was not a "liquidated demand" because (a) the policy sued upon provides that the company shall not be liable for a greater portion of any loss than the amount set out in the policy shall bear to the whole insurance covering the property against the peril involved, whether collectible or not,—and further, (b) that since the company providing insurance coverage under the policy issued by Leddon had repaired and restored the property, Crutchfield and Bing could properly have no more than a cause of action for damages for the deficiency in repairs, if any deficiency there was.

It should be remembered that under the circumstances of this case the policy issued by Leddon is to be treated as though it had never existed at any time, in so far as it might be said to affect the "interest" of Crutchfield and Selman in the insured property. If (as is unlikely), in the course of possible future litigation between Mr. Bing and the St. Paul Fire & Marine Insurance Company the latter should deem it necessary to advance the same proposition for the purpose of proportionately reducing the claim of Bing under and by virtue of the provisions of the St. Paul policy, there would be no

doubt of its propriety as a defense. It is no defense to the action of Crutchfield and Selman who cannot be prejudiced by the existence of such other policy.

Nor are we concerned with the matter of whether there was enhancement in the value of the property insured, as such value obtained immediately subsequent to the occurrence of the fire, by the action taken to repair it. Neither Crutchfield nor Selman reaped any benefit therefrom. It is true that evidence in the record demonstrates that Bing derived benefits, albeit indirectly, from the accomplishment of such repairs. If it would be proper to treat it as undisputed, however, nevertheless the insurance company could derive no comfort by reason thereof. Bing could not have been protected in the St. Paul Fire & Marine Insurance Company policy beyond the amount established as his "interest". Enhancement of his "security" in the property neither operated to increase his "interest" nor to diminish the "interest"—of Crutchfield or Selman.

By cross-assignments of error the St. Paul Fire & Marine Insurance Company asserts that in the event of a reversal of the judgment entered below, nevertheless the case should be remanded for another trial because the trial court erred in refusing to submit certain specially requested issues. The issues presented inquired as to whether the fire in question occurred while the hazard was increased by the storage on the premises of a volatile substance which was not usual and incidental to the occupancy of the house as a residence, and whether such caused or contributed to the partial destruction of the premises by fire. We have reviewed the record and reached the conclusion that the issues were not raised by the evidence and that the trial court properly refused to submit them in its charge.

Judgment is reversed. Judgment is here rendered in behalf of the plaintiffs, E. L. Crutchfield and J. W. Selman, and against the defendant, St. Paul Fire & Marine In-

surance Company, in the amount of $3,-400. Legal interest thereon is also allowed dating from June 24, 1955, the date demand, by way of suit, was filed for and by reason of total loss under provisions of Art. 6.13, Insurance Code, V.A.T.S.