St. Paul Fire and Marine Insurance Company v.
E. L. Crutchfield Et Al

No. A-7836. Opinion delivered October 3, 1961
(350 S.W. 2d Series 534)

1.

*Walker, Day & Harris,* Fort Worth. *Joe Day, Jr.,* and *Don E. Birdette* of above firm, Fort Worth, for petitioner.

*Whiteside & Baker, Ernest May,* of Fort Worth, for respondents.

MR. JUSTICE HAMILTON delivered the opinion of the Court.

This is a suit on a fire insurance policy covering a three-room frame house located in Tarrant County, such policy having been issued by the petitioner, St. Paul Fire & Marine Insurance Company, to E. L. Crutchfield, one of the respondents, on November 25, 1954, in the amount of four thousand ($4000.00) dollars. Crutchfield and J. W. Selman, the other respondent, brought this suit against the petitioner alleging a total loss of the property in question and seeking to recover the full amount of the policy. The trial court rendered judgment non obstante veredicto that respondents E. L. Crutchfield and J. M. Selman take nothing. The Court of Civil Appeals reversed and rendered for respondents. 333 S.W. 2d 203. We affirm the judgment of that court.

An understanding of the case necessitates setting forth the facts leading up to this suit in some detail. Because of the number of parties involved, they will hereafter be identified by name. E. L. Crutchfield acquired the property covered by the St. Paul policy and the premises on which it was located through a contract of sale entered into between him and a Mr. J. W. Bing on October 14, 1953. Prior to such date, Mr. Bing acquired the property from Mr. Selman, receiving a general warranty deed and executing a deed of trust to secure the balance of the indebtedness owed to Selman. This deed of trust specifically provided that Bing, as mortgagor, would keep the property fully insured. Evidently the purpose for which Bing acquired the property failed to materialize, for shortly after his purchase from Selman, Bing employed a Mr. J. A. Leddon, a local insurance and real estate businessman, as his agent to dispose of same. Through Leddon's efforts the contract of sale between Bing and Crutchfield was consummated, with the contract providing for conveyance of the property by warranty deed "when total of $500.00 is paid on principal of purchase price." Crutch-

field also agreed to execute a second lien note "with deed of trust" for the difference in the sale price of approximately $680.00, which was to be paid to Bing at the rate of $10.00 per month beginning one year from the date of the contract. The record does not reflect that this note or deed of trust was ever executed by Crutchfield. Payments on the aforementioned obligations were made by Crutchfield in amounts of $30.00 and $40.00 per month to Leddon, who maintained a record thereof and distributed the payments to Bing and to Selman. It does not appear from the record that Leddon ever acted as Crutchfield's agent.

The St. Paul Fire & Marine policy in question was obtained by Crutchfield on November 25, 1954, and Crutchfield was named therein as the principal insured. Selman was named as first mortgagee in the policy and Bing was named as second mortgagee, with a proviso that in case of loss payment was to be to all three "as their interests may appear at time of loss." The term of the St. Paul policy was from November 25, 1954, to November 25, 1955.

On December 19, 1953, without the knowledge of Crutchfield, Selman or Bing, Mr. Leddon had caused a policy of fire insurance, in the amount of $2,000.00 and covering the same three-room house, to be issued by the Service Fire Insurance Company for a three-year period ending December 19, 1956. The Service policy named Bing as the principal insured, with a loss payable clause protecting Selman's interest. Attached to the policy is a sales contract clause stating the property is under contract of sale to Crutchfield and that any loss is payable to the parties as their interests may appear.

The St. Paul policy and the Service policy covered identical property, differing only in the amount of coverage. Both policies purported to be in force on January 14, 1955, the date of the fire. Both policies were on the Texas Standard Policy Form and contained the following provisions:

1. No other fire insurance is permitted unless the total amount, including this policy, * * * is inserted in [this policy]

2. This company shall not be liable for loss occurring: * * *

    (e) While any stipulation or condition of this policy is being violated.

In each policy the total insurance shown to be in force on the property covered was the amount shown on the face of such policy.

The evidence in the record indicates that Crutchfield and Selman were unaware of the Service policy prior to the fire. Subsequent thereto they became aware of the Service policy, but refused to make any claim or join in any claim against the Service Insurance Company. Mr. Bing, however, insisted that the Service policy was the proper one to make claim under, and a dispute arose between Bing and Crutchfield over this issue, as well as over who owned title to the property and what contractual obligations remainded for Crutchfield to establish his right to a deed. At this point, apparently agreeing that the loss was less than total, Mr. Bing filed a proof of loss with the Service Insurance Company and received $1,589.50, which was expended on repairs to the house.

The disagreement between Bing and Crutchfield eventually resulted in a trespass to try title suit, with joinder in the suit, of the action by Crutchfield and Selman against St. Paul Fire & Marine Insurance Company for total loss. In settlement of the trespass to try title action, it was agreed that Crutchfield and Selman would sever the house from the land and that Bing would move same to another tract as his personal property. In consideration therefor, Bing agreed to deed all his interest in the land to Crutchfield, which would leave title to the land in Crutchfield burdened only with Selman's first lien. After this settlement was effected, the pleadings were altered so that all that remained was the present suit by Crutchfield and Selman against St. Paul for total loss.

On the trial of the case to a jury, St. Paul contended that only the Service policy issued by Mr. Leddon provided valid insurance on the house, in that the St. Paul policy never became effective due to the provision in such policy, made a condition thereof, that St. Paul would have no liability if there were other fire insurance on the identical property at the time of the fire. St. Paul also contended that the loss was less than total and that the Service policy had been ratified by Crutchfield and Selman. Neither Service Fire Insurance Company nor Mr. Bing was a party to this suit.

At the conclusion of the trial, a verdict was returned by the jury that the fire had resulted in a total loss; that as of the time

of the loss neither Crutchfield nor Selman had any knowledge of "other insurance" on the property, nor had they authorized the purchase of "other insurance" or ratified a policy affording "other insurance" either before or after the time the loss occurred. Following this verdict a motion for judgment non obstante veredicto was made by St. Paul and granted by the trial court. Judgment was then entered that Crutchfield and Selman take nothing by their suit.

On appeal from that judgment, the action of the trial court was reversed and judgment was rendered by the Court of Civil Appeals against St. Paul in the amount of $3,400.00, with legal interest thereon from June 24, 1955. The parties had conceded on appeal that Bing's interest in the subject property on the date of the fire was $600.00 and that any recovery against St. Paul should be so reduced.

■ St. Paul contends there is no evidence to support the jury verdict that the loss was total. The statement of facts contains several pages of testimony devoted to this subject. While the evidence may be conflicting, there was direct testimony by one or 'more witnesses who viewed the structure after the fire and who testified to the effect that the loss was total. The mere fact that some of the charred structure might have been used in new construction does not make the loss partial. Royal Insurance Company v. McIntyre, 90 Tex. 170, 37 S.W. 1068. We believe a jury issue on the question of total loss was properly raised, and, having been resolved against the petitioner, we find no reason to disturb the finding of the jury to that effect.

■ It is our holding that the Service policy obtained by Bing did not void the policy later obtained by Crutchfield in ignorance of the fact that he already had coverage. Automobile Ins. Co. v. Teague, Comm. App., 37 S.W. 2d 151; Baker v. Northern Assur. Co., Ltd., 214 Mich. 540, 183 N.W. 61. It was held in American Ins. Co. v. Kelley, 160 Tex. 71, 325 S.W. 2d 370, that when each of two policies obtained by the insured himself violates the concurrent insurance limitation contained in the other contract, the second policy but not the first in unenforceable. (Where, as here, the insured purchases insurance covering his interest without knowledge that he already has protection under a policy obtained by another who had no authority to act as his agent in that respect, it seems that the first policy rather than the second should be rendered unenforceable as to the interest of the insured.) See Baker v. Northern Assur. Co., Ltd., supra.

We hold that the Service policy is unenforceable as to Crutchfield, and that the St. Paul policy is unenforceable as to Bing.

■ ■ Turning now to the question of Selman's rights, St. Paul contends that he cannot recover on the St. Paul policy because the Service policy was procured by Bing under a contractual arrangement with Selman. This contention does violence to the terms of the policy and the provisions of Article 6:15 of the Insurance Code. The statute provides that the interest of a mortgagee or trustee under any fire insurance contract shall not be invalidated by any act or neglect of the mortgagor or owner of the property. Each of the policies involved in this case contain a similar provision. The effect of such a stipulation is to create between the company and the mortgagee an independent contract which cannot be affected by any act of the mortgagor or owner of which the mortgagee is ignorant. The statute has no application, of course, where additional insurance is obtained by the mortgagor at the special instance and request of the mortgagee. Home Ins. Co. of New York v. Lake Dallas Gin Co., 127 Tex. 479, 93 S.W. 2d 388. It is well settled, however, that the mortgagee's right to recover on a policy issued for his benefit is not affected by the act of the mortgagor or subsequent purchaser in taking out a second policy without the knowledge or consent of the mortgagee. Camden Fire Ins. Ass'n v. Harold E. Clayton & Co., 117 Tex. 414, 6 S.W. 2d 1029; Union Assur. Soc., Ltd. v. Equitable Trust Co., 127 Tex. 618, 94 S.W. 2d 1151; British Amer. Assur. Co. v. Mid-Continent Life Ins. Co., Comm. App., 37 S.W. 2d 742. The courts of this and a majority of the other states agree, moreover, that the statute immunizes the mortgagee against the legal consequences of any act done by the mortgagor or owner either prior or subsequent to issuance of the policy in question. Georgia Home Ins. Co. v. Golden, 127 Tex. 93, 91 S.W. 2d 695; Annotation, 97 A.L.R. 1165. Since Selman did not know that the Service policy had been purchased by Bing and has elected not to accept or adopt the same, we hold that the existence of such policy does not invalidate the contract between Selman and St. Paul.

■ Selman is, or at least was at the time of the fire, in the position of having two valid and enforceable contracts protecting his interest. Each policy provides that the company shall not be liable for a greater proportion of any loss than the amount thereby insured bears to the whole insurance covering the property. The next question to be considered then is whether petitioner is liable to Selman for the full amount unpaid on his

encumbrance or only for its pro rata share thereof. In a case involving somewhat similar facts, the trial court held that the recovery in favor of the mortgagee should be apportioned between the two insurance companies in accordance with the policy provisions, and the Court of Civil Appeals affirmed. Union Assur. Soc., Ltd. v. Equitable Trust Co., Tex. Civ. App., 63 S.W. 2d 869. Writ of error was granted by this court, but the apportionment question was not brought forward. The first insurer contended only that the entire loss should fall on the second. After pointing out that under terms of the mortgage clause the rights of the mortgagees were not affected by the act of the owner in taking out a second policy, we said:

"It follows, therefore, that plaintiffs [mortgagees] were not required to look to the second policy, which was secured without their knowledge or consent, and which they did not elect to accept or adopt, even though it undertook to protect their interests, and they had a right to look to the Union Company for the payment of their loss. That Company, therefore, is in no position to complain of the judgment which only held it liable for one-half of the loss." Union Assur. Soc., Ltd. v. Equitable Trust Co., 127 Tex. 618, 94 S.W. 2d 1151.

The courts of other jurisdictions are not in agreement as to the effect of the apportionment clause on the rights of the mortgagee. See Annotations, 1 A.L.R. 498, 72 A.L.R. 278. Some have held that such provision is not part of the contract between the insurer and mortgagee and that the latter is not bound thereby. Duncan Building & Loan Ass'n v. Glens Falls Ins. Co., 11 N. J. Misc. 791, 168 Atl. 767; Reed v. St. Paul Fire & Marine Ins. Co., 67 Pa. Super. 110. Others have taken the position that proration is in order whenever two policies actually inure to the benefit of one party. Camden Fire Ins. Ass'n v. Sutherland, Comm. App., 284 S.W. 927; Sun Ins. Co. v. Varble, 103 Ky. 758, 46 S.W. 486; Lipsitz v. Union Assur. Soc., Ltd., 268 N.Y.S. 179, 149 Misc. 809; Federal Land Bank of Columbia v. Globe & Rutgers Fire Ins. Co., 187 N. C. 97, 121 S. E. 37; Goodman v. Quaker City Fire and Marine Ins. Co., 1st Cir., 254 F. 2d 844; Tri-State Mut. Grain Dealers Fire Ins. Co. v. Morris, 9th Cir., 268 F. 2d 956. Appleman feels that the decisions applying the apportionment rule reach an equitable result. Appleman, Insurance Law and Practice, Vol. 6, p. 289, Sec. 3909.

We have concluded that the mortgagee is not bound by the

apportionment clause contained in the policy. Where a mortgagee is insured by two policies, and does not have actual knowledge of either of them until after the loss, he may recover on either one of the policies the full amount of his loss up to the policy limit. Selman, the mortgagee, having elected to sue on the St. Paul policy, is not required to look to the Service Company policy.

■ St. Paul contends that even though the Service policy was not "other insurance" as to Crutchfield and Selman at the time of the fire, that by selling the repaired house to Bing they had accepted benefits under the Service policy and by such conduct had ratified the Service policy, and that such ratification renders the Service policy "other insurance" as prohibited by the St. Paul policy.

St. Paul cites the case of Glen Falls Insurance Co. v. Jacobs, 227 Ky. 741, 13 S.W. 2d 1040 (Anno. 76 A.L.R. 1170) and Continental Ins. Co. v. Riggs, 227 Ky. 361, 126 S.W. 2d 853 (Anno. 121 A.L.R. 1421). These cases recognize the rule that an insurance policy issued without the knowledge or consent of one asserting a claim under another policy prohibiting other insurance may be "other insurance" within the terms of the policy in suit if ratified by acceptance of benefits under such other policy. We do not disagree with this rule, but we are not satisfied that the action of Crutchfield and Selman in selling the house was such an acceptance of benefits under the Service policy as to amount to a ratification of the policy. It is true that Bing repaired the house and was paid for such repairs by the Service Fire Insurance Company, but the record reflects that such repairs were made over the protest of Crutchfield, and whatever Bing did to the house in the way of repairs was done as a mere volunteer in so far as Crutchfield was concerned. The act of selling said house does not amount to a ratification of the Service policy. At most it would amount to a conversion of the salvage to the insured's own use and benefit. St. Paul is not here complaining about any loss of salvage. The Court of Civil Appeals, in its judgment, deducted from the face amount of the policy the amount for which Crutchfield sold the house, and none of the parties complain of such action.

The judgment of the Court of Civil Appeals is affirmed.