John A. BENNETT et al., Appellants,

v.

IMPERIAL INSURANCE COMPANY,
Jack Hagar, Cliff Depoy and Morris
Apple, Appellees.

No. 20224.

Court of Civil Appeals of Texas,
Dallas.

Aug. 11, 1980.

Rehearing Denied Sept. 24, 1980.

Edward B. Cloutman, III, Fred Weldon, Mullinax, Wells, Baab, Cloutman & Chapman, Dallas, for appellants.

Nathan L. Hecht, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellees.

Before GUITTARD, C. J., and AKIN and STOREY, JJ.

STOREY, Justice.

This appeal is from a judgment in favor of the insurer, notwithstanding a jury finding that a fire, the risk insured against, resulted in "total loss" to the insured premises. The principal question on appeal is whether the record contains evidence to support the jury finding. Other questions presented are whether the trial court properly submitted the issue of damages for partial loss and whether it properly granted summary judgment denying plaintiff's claims under the Deceptive Trade Practices Act and the Texas Insurance Code.[1] We have concluded that the record contains no evidence supporting the finding of total loss and that the claim for partial loss was properly submitted. We also conclude that summary judgment with respect to the Deceptive Trade Practices Act and the Texas Insurance Code was improvidently granted but was harmless error under the circumstances of this case.

## TOTAL LOSS

The standard applied in determining total loss by fire is whether a reasonably prudent owner, uninsured, desiring such a structure as the one in question was before injury, would, in proceeding to restore the building to its original condition, utilize such remnant as such basis. *Glens Falls Insurance Co. v. Peters*, 386 S.W.2d 529 (Tex.1965); *Royal Insurance Co. v. McIntyre*, 90 Tex. 170, 37 S.W. 1068, 1074

1. This suit commenced when Imperial Insurance Company sued John A. Bennett and wife, seeking a judgment declaring that its policy, a builder's risk policy, was not effective because the insured property was not under construction at the time of loss. Bennett, by counterclaim, sought reformation of the policy to the extent that its coverage, when reformed, would be identical to that afforded by a Texas Standard Fire Insurance Policy. The Bennetts also joined three individual insurance agents alleging that they, and in turn Imperial as their principal, misrepresented the benefits provided by the policy. Thus they sought relief against Imperial and the agents under the Texas Deceptive Trade Practices Act and the Texas In-surance Code. Before trial, Imperial consented to reformation of its policy to provide for standard fire coverage. In return for this consent, the agents agreed to indemnify Imperial from any loss arising out of the transaction. Consequently, Imperial did not appear or participate in trial of the case. The trial court entered an interlocutory order reforming the policy and realigned the parties making the Bennetts the plaintiff claimants and the agents defendant-insurers. The case proceeded as a suit upon a Texas Standard Fire Insurance Policy. This was the posture of the parties in the trial court and our references to them will be as plaintiffs and insurer.

(1896). The trial court's charge to the jury followed this standard. Neither party questions this precept, nor do they question the statutory authority that if a total loss be found by probative evidence to exist, the face amount of the policy becomes a liquidated amount and no further proof of damage need be made. Tex.Ins.Code Ann. art. 6.13 (Vernon 1963). Under the statute, it is immaterial whether the face amount of the policy exceeds the actual value of the building. *Superior Fire Insurance Co. v. Roberts*, 84 S.W.2d 810, 811 (Tex.Civ.App.–Dallas 1935, no writ).

The question of whether a fire resulted in total loss is generally one of fact, *United States Fire Insurance Co. v. Boswell*, 82 S.W.2d 176, 178 (Tex.Civ.App. Fort Worth 1935, writ dism'd), and the standard of review here where total loss was found by the jury is whether the record contains any evidence to support the finding. *Langlotz v. Citizens Fidelity Insurance Co.*, 505 S.W.2d 249, 250 (Tex.1974). In examining the evidence we must view it most favorably in support of the verdict, and evidence to the contrary must be of such character that reasonable minds could not differ as to the conclusion to be drawn from it. *Najera v. Great Atlantic & Pacific Tea Co.*, 146 Tex. 367, 207 S.W.2d 365, 367 (1948); *Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059, 1063 (1898).

We turn now to the historical facts. The insured property was a twenty–six unit brick veneer apartment building which was built in 1965 at a cost exceeding $100,000. The original construction or purchase money loan was foreclosed in 1975 and the property stood vacant until the time of loss. Plaintiffs purchased the property in April 1977 for about $8,000. At the time of purchase and immediately before the loss, the property was not habitable because of deterioration and vandalism, and the neighborhood surrounding it was a depressed real estate market area. The policy in question was issued in May 1977. For coverage purposes, the insurer valued the property at $150,000. This value was determined by calculating square footage and multiplying by replacement cost per square foot. The $120,000 value stated in the policy was eighty percent of this product. Plaintiffs were under compulsion from the city to bring the property to building code standards, but no repairs had been made at the time of the fire loss on July 27, 1977. While there are differences in the testimony of the witnesses, the adjudicative facts are without material dispute. Mrs. Bennett, who was experienced in buying and selling real estate in the area, testified that the actual value of the property before the fire was $150,000 and that the cost of repairs before the fire would be about $200 per unit. She testified that after the fire the brick walls remained standing. Henry, an expert witness called by plaintiff, testified that before the fire, repairs could have been made for about $1,000 per unit. Afterward, according to Henry, the cost of rebuilding would be $131,000, or about $5,000 per unit, and the cost of razing and rebuilding would be $230,000. He testified that ninety five percent of the brick walls were intact and six of the largest apartments were in sound condition. Terrell, plaintiff's other expert witness, testified that cost of rebuilding from the remnant would be $124,000. Reese, an expert witness called by the insurer, testified that the value before the fire was $8,500 and that the cost of rebuilding from the remnant would be $160,000. He also expressed the opinion that after repairs were accomplished, the property value would be less than the cost of repairs and concluded that a prudent owner would not spend his own money to repair.

All witnesses agreed that useable remnants remained after the fire. Plaintiffs testified that they had taken out a building permit to rebuild from the remnants. Henry testified that in his professional judgment the reasonable course would be to rebuild from the remnant rather than to raze and rebuild from the ground. Terrell testified that there was a substantial amount of the structure worth saving rather than tearing it down.

Plaintiff argues that the jury was free to draw inferences from this testimony and the only reasonable inference to be drawn is that a prudent owner would not use his own money to repair the remnant. We disagree. While it may be concluded that the evidence tends to prove the building was worth substantially less after the fire than before, the cost of rebuilding after the fire was substantially greater than before, and the cost of repair would likely exceed the value of the building after repair, none of these facts go to the real issue. Rather, these facts relate to the question of whether a prudent owner would make the decision to rebuild. The test, on the other hand, is whether the owner, having made the decision to rebuild, would use the remnants as a basis for rebuilding. *Glens Falls Insurance Co. v. Peters*, 386 S.W.2d at 531. Plaintiff's reasoning ignores other factors affecting value which are not related to the insured risk. For example, the witness Reese testified that when rebuilt the property value would be less than the $160,000 needed to rebuild. This relates to the depressed market in the area and consequently goes to the decision to rebuild rather than, having decided to rebuild, whether the owner would use the remnants.

■ Nor can we agree with plaintiff that, standing alone, a substantial reduction in value before and after the loss is evidence of total loss. Plaintiff points out that whether the value before was $150,000, as testified by Mrs. Bennett, or $8,500, as testified by Reese, or $28,900, as found by the jury, all witnesses agree that the value was nominal after the fire. Plaintiff relies on the authority of *Ranger Insurance Co. v. Kidd*, 478 S.W.2d 803 (Tex.Civ.App. Amarillo 1972, writ ref'd n.r.e.). That case resulted from loss to an aircraft, but the parties acquiesced in the submission of the case as if it were real property, that is, the prudent owner desiring to rebuild. While the court pointed out that the evidence showed a substantial reduction in value after the crash and that costs of repair exceeded the estimated value after repair, it also pointed out that because of the unique nature of aircraft, determination of its value and extent of loss are subject to variables not present in real property. Consequently, the rationale in *Ranger Insurance* is not applicable to the test required to be met in the case of real property.

■ Plaintiff relies upon *St. Paul Fire & Marine Insurance Company v. Crutchfield*, 162 Tex. 586, 350 S.W.2d 534, 537 (Tex.1961) where the court held that "the mere fact that some of the charred structure might have been used in new construction does not make the loss partial;" and upon *Aetna Casualty & Surety Co. v. Clark*, 427 S.W.2d 649 (Tex.Civ.App. Dallas 1968, no writ), where, despite the fact that all exterior walls remained standing, the finding of total loss was affirmed. *Crutchfield* supplies no facts to guide us except that "one or more witnesses who viewed the [building] after the fire ... testified ... that [it was a total] loss." 350 S.W.2d at 537. Here, no witness testified that the building was a total loss. Rather, it was undisputed that ninety five percent of the exterior walls were intact, and the interiors of six large apartments were untouched by fire. In *Clark*, while the evidence showed the exterior to be virtually untouched, the crucial fact appeared to be that the interior was described as "melted" and no part of it escaped the fire. On these facts we do not consider these cases persuasive here. We conclude, therefore, that none of the cited testimony goes to the legal standard required to determine total loss and consequently the evidence fails to support the jury finding that the loss was total.

■ Plaintiffs insist, however, that the jury could infer total loss from photographs before it. In our view, the photographs do no more than corroborate the testimony of the witnesses. While they show the charred remains of parts of the interior which were reached by the fire, plaintiffs and their witnesses testified that substantial parts of the building were virtually untouched by the fire. In *Lincoln County Mutual Fire Insurance Co. v. Smith*, 232 S.W.2d 637 (Tex.Civ.App. Fort Worth 1950, writ ref'd n.r.e.), relied upon by plaintiff, the court held that:

There can be no total loss of a building so long as a substantial remnant of the structure, standing in place, is reasonably adapted for use as a basis upon which to restore . . . .

That court also held that whether it is so adapted depends upon the prudent owner test. *Id.* at 639. Applying this rule, no witness in this case testified that the building was a total loss, but, on the contrary, all witnesses testified that a substantial part of it remained untouched and that sound judgment dictated use of the remnants to rebuild if the owner still desired an apartment building on the property. We conclude that the jury could not infer total loss solely from the photographs in light of the direct testimony of plaintiffs and their witnesses.

### DAMAGES FOR PARTIAL LOSS

■ With respect to the partial loss suffered by plaintiffs, the trial court instructed the jury to find the market value of the property before and after the fire in accordance with the general rule regarding real property. *United States Fire Insurance Co. v. Stricklin*, 556 S.W.2d 575, 582 (Tex.Civ. App.–Dallas 1977), *writ ref'd n.r.e.*, 565 S.W.2d 43 (Tex.1978). Plaintiffs contend they were entitled to an issue on intrinsic value instead, because the property had no market value after the fire and because the property had a unique value to them. This unique value is created, according to plaintiffs, because of their demonstrated ability to manage marginal properties and to repair and maintain them without the assistance of third–party contractors. Plaintiffs urge, therefore, that we should apply the measure of damages approved by the supreme court in *Crisp v. Security National Insurance Co.*, 369 S.W.2d 326 (Tex.1963). *Crisp* concerned a fire loss of used household goods, clothing and personal effects. The court there observed that an insured should not be limited to an amount which this kind of property might bring on a second–hand market. Further, the court said, the insured should not be entitled to replacement costs because obsolescence and change of style might result in economic

gain to the insured. Instead, the court concluded that an insured should be entitled to actual worth or value to the owner for use in the condition they were at the time of the fire excluding any fanciful or sentimental considerations.

We read *Crisp* as limiting its holding to used household goods, clothing, and personal effects. This conclusion is reinforced by the supreme court's holding in *Allstate Insurance Co. v. Chance*, 590 S.W.2d 703, 704 (Tex.1979) and by this court's holding in *United States Fire Insurance Co. v. Stricklin*, 556 S.W.2d 575, 581–582 (Tex.Civ.App.– Dallas 1977), *writ ref'd n.r.e.*, 565 S.W.2d 43 (Tex.1978). We conclude, therefore, that the trial court's issues on damages were proper.

### DECEPTIVE TRADE PRACTICES AND INSURANCE CODE

■ Finally, plaintiffs claim the trial court erred in dismissing their claims under the Deceptive Trade Practices Act and in striking their pleadings in support of those claims. The trial court announced at the commencement of trial that the insurer's motion for summary judgment on the deceptive trade practices claims would be granted. This was at a time when no motion was before the court. Plaintiffs argue that this action of the court deprived them of the opportunity to amend their pleadings and to offer controverting evidence to a motion for summary judgment filed after trial on the merits. While we find no basis upon which to condone the trial court's granting of a motion for summary judgment under these circumstances, it is clear from the undisputed evidence at trial that no harm resulted to plaintiffs by removal of these claims, because the Deceptive Trade Practices Act is not applicable to the facts of this case.

We conclude that plaintiff has no basis for a claim under the Deceptive Trade Practices Act because the insurance policy was a commercial service that was not within the Act at the times relevant to this claim. At the time the policy was issued, the Decep-

tive Trade Practices Act, section 17.45(2) provided:

"Services" means work, labor, or service purchased or leased for use, *for other than business or commercial use*, including services furnished in connection with the sale or repair of goods. [Emphasis added.]

*See* 1973 Tex.Gen.Laws, ch. 143, § 1, at 322. While our courts have held that insurance is a "service" under the Act, *Dairyland County Mutual Insurance Co. v. Harrison*, 578 S.W.2d 186 (Tex.Civ.App.–Houston [14th Dist.] 1979, no writ), services for "business or commercial" use are expressly excluded. Plaintiffs recognize the exclusion contained in section 17.45(2) but urge that the section should be construed to include commercial services in order to effect the legislative intent that the Act be liberally construed. Although the Act has now been amended to remove the exclusion, we cannot assume that its earlier provision was the result of legislative omission; we are, therefore, compelled to apply the Act in accordance with its plain language and overrule plaintiffs' point of error. *See generally United Postage Corp. v. Kammeyer*, 581 S.W.2d 716, 721 (Tex.Civ.App.–Dallas 1979, no writ).

For like reasons it is clear that no harm resulted to plaintiffs by the denial of their claims under the Tex.Ins.Code Ann. art. 21.21 § 4(1), based on misrepresentation of the benefits provided by the policy. This is true because plaintiffs sought and obtained reformation of the policy to provide the benefits it was represented to provide. As we have previously noted, the trial court ordered reformation of the policy before trial so that coverage under the policy would be identical to that afforded by a Standard Fire Policy, and the case proceeded to trial on that theory. Consequently, the issues at trial were the same as if plaintiffs had initially received the coverage that was promised by defendants. Plaintiffs' argument that article 21.21 would have afforded them the difference between total and partial loss as actual damages is without merit, because, as we have already held, total loss was not proved.

Plaintiffs contend, however, that they could have proved incidental or consequential damages which would have been recoverable as actual damages under article 21.-21. These damages, they contend, include lost rentals, debris removal costs, and expert witness and attorney's fees. We cannot agree. These are expenses which would have been incurred if standard fire coverage had been initially provided, and the insurer had, as here, asserted its right to contest the total loss claim.

Affirmed.