**SOUTHERN PACIFIC COMPANY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 5966.**

Court of Civil Appeals of Texas. El Paso.

Feb. 19, 1969.

Rehearing Denied March 19, 1969.

Kemp, Smith, White, Duncan & Hammond, Wyndham K. White, El Paso, for appellant.

Crawford C. Martin, Atty. Gen., Watson Arnold, C. W. Pearcy and Robert D. McGee, Asst. Attys. Gen., Austin, for appellee.

## OPINION

FRASER, Chief Justice.

This is a condemnation case where the only question submitted to the jury involved the value of the property taken by the State in condemnation. The Commissioners placed a value of $328,800.00 on the property. On appeal to the County Court at Law No. One of El Paso County, Texas, the jury awarded the sum of $125,000.00. For purposes of brevity and clarity, the plaintiff-appellee will be hereinafter referred to as the "State", and the appellant referred to as the "Appellant".

The State brought this condemnation proceeding to condemn 242,512 square feet of land belonging to Appellant and located in the City of El Paso, Texas. The land was taken by agreement between the parties on April 25, 1966, this being the date of the execution of the right of entry agreement between the State and Appellant. It was after this that the Commissioners, who had been duly appointed, held hearings and awarded Appellant the sum of $328,800.00. The State appealed from the award, and the aforesaid jury trial was held. Both sides placed value witnesses before the jury, which, as stated above, rendered a verdict in the sum of $125,000.-00, and judgment was entered based on said verdict.

The State had deposited, on December 15, 1966, the sum of $328,800.00, which was the amount of the Commissioners' award. This amount had been withdrawn from the registry of the court by Appellant. The court entered judgment for the State and decreed that it recover from Appellant the sum of $203,800.00, said sum being the difference in the amount of the judgment and the amount of the award of the Commissioners. Such judgment was entered October 18, 1967. On the same date, Appellant deposited into the registry of the court two checks, one in the amount of $203,800.00, and the other in the amount of $125,000.00. Subsequently, on the 4th day of January, 1968, the State withdrew, by proper motion and order, the sum of $203,800.00 from the registry of the court.

We will first consider the State's motion petitioning the court not to consider Appellant's appeal and points of error. The State maintains in this motion that because it withdrew the sum of $203,800 from the registry of the court, leaving therein the amount found by the judgment of the court —to-wit, $125,000.00—that the judgment has been satisfied as entered, and maintains that the State has satisfied such judgment. In other words on October 18, 1967, the defendant-appellant deposited into the registry of the court the total sum of $328,-800.00, which was a return of all the money that had been deposited by the State after the Commissioners made their award. The State then withdrew the sum of $203,800.-00, leaving $125,000.00 in the registry of the court, claiming that such action satisfied and extinguished the judgment of the court as entered. The State maintains that the action of the Appellant in paying all the money back into court amounted to an acceptance of the judgment.

We do not find sufficient merit in this motion to authorize our granting the

same. The Supreme Court of Texas, in the case of Fort Worth Concrete Company v. State, 400 S.W.2d 314 (1966), pointed out that the purpose of such deposit and the rights flowing therefrom is to protect or act as security for any possible damage suffered by reason of dispossession. We agree with the State that the landowner can withdraw this award or leave it in the registry of the court. In other words, Appellant would still be entitled to continue its appeal if it had retained, after judgment was entered and pending appeal, the entire amount of the Commissioners' award, or had left the entire amount in the registry of the court. Henslee v. State, Tex.Civ.App., 375 S.W.2d 474 (ref., n. r. e.). We also agree that by refunding the entire Commissioners' award, Appellant clearly indicated that it was not satisfied with the jury verdict and the judgment entered thereon, and would appeal from that judgment. It must be noted that Appellant did not withdraw money deposited by the State after judgment, but only after the award. In other words, the Appellant withdrew money after the award, re-deposited the same, and has not drawn any money from the court after the judgment on which this appeal is based. Appellee-State cites several cases in support of its position, but these are cases where the award of the Commissioners, and not the amount entered pursuant to the court judgment, that had been accepted by the landowner. In the case of Latimer v. State, 328 S.W.2d 242 (n. r. e.), appellant did not withdraw money deposited by the State after judgment, but after the Commissioners' award. The Beaumont Court of Civil Appeals, in such case, noted that under Vernon's Ann. Civ.St. Article 3268, the condemnee could withdraw the money and still prosecute his appeal; but said court points out that several cited cases were not in point, in as much as it was the award of the Commissioners in such cases, and not the amount entered pursuant to the court judgment, that had been accepted by the landowner. The court further emphasizes and points up that Article 3268, V.T.C.S., is author-

ity for prosecuting an appeal after having accepted or appropriated the Commissioners' award, but such authority does not apply to an appeal from a judgment award. The court points out that removal of the condemnation proceeding to a county court creates a trial de novo situation, with different rules governing when an appeal is perfected from a court judgment, rather than from an award by the Commissioners. Here, the Appellant obviously did not accept the judgment of the trial court, because it refunded the entire Commissioners' award, indicating that it was not satisfied with the verdict in the County Court at Law and the judgment entered thereon, and Appellant would, therefore, appeal from such judgment.

For these reasons, the State's motion not to consider this Appellant's appeal and points of error is overruled.

Appellant's first point of error charges that the court erred in failing and refusing to grant its motion for mistrial when the State injected into the record the fact that the Appellant had already been paid $97,000.00 for the costs of moving pole lines, track, etc. The question asked by the State of Mr. Arthur Abbott, a witness for Appellant, was this: "Isn't it a fact, Mr. Abbott, that the Southern Pacific had already been paid some $97,000.00 to move all of these pole lines and * * *". Appellant takes the position that this is incurable error caused by misconduct on the part of an attorney in asking the question. We cannot agree with the Appellant's position. In the first place, we do not think the question was so inflammable and irremovable from the minds of the jury that the instruction of the court was not adequately curative, nor was the question of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. Further, the Appellant had, for approximately two days, questioned Mr. Abbott regarding the removal and location of certain pole lines, signals, switches, etc. The State maintains that Appellant intro-

duced considerable testimony on direct examination that such relocation and removal was necessary due to the freeway, and that such action invited and required inquiry and cross examination (the disputed. question here was on cross examination). The record reveals that the witness Abbott testified, with the assistance of photographs, regarding certain track embankment, pole lines and small signal buildings that the railroad had to remove because of the taking. The State further submits that all of this direct testimony elicited by Appellant, over a period involving some two days of the trial, as well as the exhibits introduced by the Appellant, was for the purpose of indicating to the jury that these items had to be relocated and some placed underground at some expense to the railroad, when in fact the railroad knew it had already been compensated for such removal and relocation. Accordingly, the State argues that it had the right to show the jury that such costs had already been paid to the railroad.

■ We do not believe the disputed question asked on cross examination to have been so inflammatory and incurable that the instruction of the judge to disregard same was insufficient to cure the error; and it was not such a question as, our minds, would cause rendition of an improper answer or verdict. This point of error is overruled.

■ Appellant alleges error in the action of the trial court in refusing to admit into evidence as a comparable sale, the sale of a certain piece of property. We feel that this point must be overruled because the sale was by a condemning authority. This matter was brought up and objected to by the State, and the court sustained the objection. The Appellant apparently did not take exception to the court's ruling and did not perfect a bill of exception, and therefore, in our opinion, has waived said point. Appellant's Point 2 is accordingly overruled.

Appellant's Point of Error No. 3 charges error on the part of the trial court in refusing to admit into evidence as a comparable sale the sale of property located at 1418 West Main Street, from a Mr. Fuentes to Mr. Yowell in November 1963.

State argues that the court did not abuse its discretion and did not err in excluding from evidence certain information in regard to said sale of property from Fuentes to Yowell because said sale was an expansion or accumulation sale; the property had improvements thereon at the time of the sale, and should not be considered as comparable to, or indicate the market value of, Appellant's subject property which was vacant land.

The record shows that Mr. Yowell owned a Dr. Pepper bottling plant adjacent to and abutting on the property he bought from Mr. Fuentes, and on cross examination Mr. Yowell testified that the real purpose for which he bought the property was to expand the plant he owned, and that was what he had already done on about half of it. He further admitted that there were several buildings on the property and that the seller, Mr. Fuentes, was living in one of the structures. A witness, Mr. Worthen, stated that in his conversation with Mr. Yowell, Mr. Yowell stated that he purchased the property to combine with the abutting property on which he had previously located a bottling plant. Mr. Worthen also said that Mr. Yowell did not indicate to him that it was a free and open transaction, and indicated that he (Worthen) felt that there was some motivating factor on the part of Mr. Yowell when he bought this property abutting on his own property.

■ Further, the court itself asked Mr. Yowell about the matter of improvements, and Mr. Yowell's reply was that the improvements on the property belonging to Mr. Fuentes were Mr. Fuentes' livelihood and had a value to him. Further, they (the bottling plant owned by Mr. Yowell) indicated that they knew if they were

going to expand, and having some money at that time, that they might have even paid a little more than the $40,000.00 if they had really needed it badly; and lastly, that the property, of course, would be worth more to the Dr. Pepper bottling plant than it probably would be to anyone else. Mr. Yowell, on cross examination, admitted that he bought the subject land to use in connection with his bottling plant and to expand his own property. For these reasons we feel that the trial judge did not abuse his discretion in excluding this testimony on the ground that it was not properly comparable to the matter before the court. Appellant's third point is therefore overruled.

■ Appellant's Point No. 4 charges that the court committed error in refusing to admit the introduction of evidence, as a comparable sale, concerning the sale of property bounded by Yandell, Wyoming, Eucalyptus and Willow Streets from R. E. Goff to Hicks Vehicle Rental. The sale was dated September 1, 1962.

Appellant maintains that the evidence sought to be introduced by Mr. Shafer, the chief land appraiser for the Southern Pacific Company, should have been admitted. It maintains that it was an area of 90,300 square feet with very minor improvements; that the improvements thereon were minimal; and further that the land has rail access and rails could be put in there, and that the neighborhood is primarily industrial property. In its bill of exception Appellant put on additional evidence to the effect that the property occupied approximately a city block, except a small portion, and that it was zoned C-4 Commercial, and that the improvements were extremely under-improved for the site, and valued at $15,000.00. Further, appellant brings out in its bill of exception that the property is about one block from Cotton Avenue, with the access along Wyoming Street being good, but the access north to Montana badly interfered with by the railroad track.

The State represents that the property was improved at the time, and that the comparing of improved property to vacant land, such as the subject herein considered, is improper. The State further points out that the comparable property was in different zoning and use, bounded on four sides by four different streets, and was a considerable distance across town from the subject property. The State further points out that the subject property was industrial use property zoned M-1 whereas the property offered for comparable value was zoned "C". The State also points out that the witness for Appellant, Mr. Shafer, stated that excluding this particular sale from Goff to Hicks would not change his opinion as to the market value of the subject property. The State also maintains that the buildings which existed on the property consisted of a two-story small office building occupying 1980 square feet, and that all the buildings together occupied some 5280 square feet of space, and that the location of the Goff property offered for comparable· purposes was near the Five Points intersection, which has been developed for commercial purposes for some years.

We do not believe the court abused its discretion in excluding this testimony for, as pointed out in City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808 (1954), comparing improved property with unimproved property requires a secondary appraisal and requires the appraiser to abstract out the improvements on the sale. This, of course, calls for the making of an appraisal of the property and improvements involved in the sale before using same as a comparable. Usually—and there is no contradiction here—the judgment of the witness as to the appraised value of the improvements has to be based on evidence that would be inadmissible under hearsay and other evidentiary rules and would deprive the opposing party of its right of cross examination concerning the facts involved. And finally, the State again reiterates that the Goff sale involved a tract

of land completely surrounded by four streets, two of which are major arteries, and that to use such as a comparable of the subject property, which has frontage on only one street, and said street is not a major artery, would be misleading to the jury. For these reasons we believe that the trial court did not in any way abuse its discretion. Appellant's fourth point is therefore overruled.

■ Appellant's Point No. 5 charges that the court committed error in refusing to permit the introduction of evidence concerning the sale of property, as a comparable sale, on Main Street, from the El Paso and Southwestern Railroad to Zork Investment Company, being a portion of Block 18, Mills Addition and located at the northeast corner of Santa Fe and Main Streets. Appellant states in its brief that at the time Zork made the purchase, the property in question was vacant except for being used as a parking lot, and has a frontage of 120 feet on Main Street with a uniform depth of 111.85 feet. Appellant also points out that its witness and local appraisers agreed as to the worth of this property. Zork eventually bought the property, which was close to a track on Main Street and was zoned C-4, but could be used for industrial purposes. It will be remembered that the subject property of this lawsuit was zoned M-1. Appellant introduced various exhibits showing the location of Zork parking lot to demonstrate that it is adjoined by a warehouse.

State points out in its brief that the purchase by Zork investment was for the purpose of employee and customer parking in connection with the warehouse expansion of Zork Hardware, and maintains that this places the sale in the nature of an expansion sale. The State also points out that the location of the sale was only one and one-half blocks from the Plaza, which is the center and heart of downtown El Paso, and again points out that it was zoned C-4, as compared with the subject property which is zoned M-1. The State further objected that it was not comparable because it was fronted on two sides by Main Street and Santa Fe Street and this, along with being located only a block and a half from the center of downtown El Paso, rendered the use of such sale as a comparable to the subject-property improper and inaccurate. The court, after hearing the facts concerning the sale, excluded the sale, and it must be pointed out that in this particular item the Appellant's witness, Shafer, again stated that the exclusion of this sale would not affect or change his opinion of the market value of the subject property. State also points out that on re-cross examination under the Bill, witness Arthur Abbott stated that the photographs were taken within the last few days and did not reflect the condition of the properties at the time of the sale. We believe that the foregoing facts are another illustration, or prime example, of why the court hearing the case should have discretion as to whether or not an allegedly comparable sale be admitted into evidence, and illustrates, in our opinion adequately, that the admissibility of certain sales should be left to the court's discretion. State also points out the difference between this particular piece of property and the subject property of this lawsuit, which is located and cut off from the center of town by a main line railroad on one side, and an old residential area on the other side. These are some of the matters that justify granting the trial court wide discretion as to the admission or exclusion of comparable sales. State also points out that even if it had been improper on the part of the court to exclude this sale, such error, if any, was cured and rendered harmless by the testimony of Appellant's own witness, Shafer, that even if he excluded the consideration of this sale, that based upon his other sales introduced into evidence, his opinion of the market value of the subject property would not change. For these reasons we do not believe the trial court abused the discretion granted him in matters of this kind, and Appellant's Point 5 is accordingly overruled.

Appellant's sixth point states that the trial court committed error in refusing to permit the introduction of evidence concerning the sale of property at the corner of San Francisco and Durango Streets as a comparable sale, the property being 60.3 feet on San Francisco by 133 feet on Durango. The evidence sought to be admitted was from a sale by Joseph Abraham to Raymond P. Medrano. We think the court was correct in excluding this bit of evidence, as the property was known as the old Carlyle Hotel. The improvements were abstracted out of the property and the residual value was set at $2.48 per square foot. The property has railroad tracks in the rear of it. The appellant states that the building in question was at least sixty years old, had burned down, the top two floors had been demolished, the roof readded, and that the remaining economic life of the building cannot be more than fifteen years, and the value put on the improvements was $9,000.00. The building is one-story and is used as a clothing warehouse (Ropa Usada).

We do not believe that the court abused its discretion in excluding this corner with a building on it as comparable to the subject land before us, and again, the witness testified that excluding the consideration of this land would not change his opinion of the market value of the subject property to be taken. Appellant's sixth point is therefore overruled.

Appellant's seventh point charges the court with error in sustaining the objection of the State to the argument of Mr. Jack Duncan, one of the attorneys for the Appellant, concerning the State's failure to call as a witness one of the appraisers, a Mr. Bill Browning. It was stipulated that Mr. Browning was paid a fee commensurate with the fees paid other appraisers hired by both sides. We cannot sustain this point because Appellant did not take a bill of exception concerning the court's ruling in order to show what it would have said in argument in addition to what had already been said. In other words, Appellant does not show how it was harmed, and we cannot call that which we do not know to be harmful, reversible error. Further, the judge merely sustained the objection to Mr. Duncan's further argument on the subject, but refused the request by the State to instruct the jury not to consider the remarks made by Mr. Duncan. In any event, Appellant could have called Mr. Browning itself, since Mr. Browning is an independent local real estate appraiser in El Paso and was as available to Appellant as to the State. We therefore feel that the Appellant failed to show any harm in the court having sustained the objection to its argument, and Point 7 is therefore overruled.

Appellant's Point No. 8 charges that the trial court committed error in sustaining the objection of the State to the argument made by Mr. Jack Duncan which referred to a situation testified to by Mr. Ken Wheeler. The court, although sustaining State's objection, refused to instruct the jury not to consider the statement for any purpose, so the jury was thereby permitted to consider the statement as far as it went. Again, we find no reversible error in this point for, as in the preceding point, Appellant did not take a bill of exception as to what further arguments and statements would have been made to the jury if the objection had not been sustained; hence we have no way of knowing, and there is no showing, as to how the Appellant was harmed by the court's ruling. In evaluating situations such as those set forth in Points 7 and 8, bills of exception are needed, along with correlation of the actual facts and circumstances reflected by the record and any other pertinent information, to enable the appellate court to determine whether probable harm resulted from the court's ruling. We do not have these matters before us in these two points. Therefore, we must hold that Appellant has not shown what could or would have been said had the court not sustained the objection to its

argument, and that Appellant suffered probable harm thereby. Appellant's eighth point is therefore overruled.

Appellant's ninth point merely states that the verdict of the jury is not supported by the evidence and the amount of the verdict and judgment is grossly inadequate. We feel that this matter has been amply covered by our rulings on the various preceding points and that the matter of the amount of the verdict and judgment has been adequately treated. Appellant's ninth point is accordingly overruled.

Appellant's tenth point states that the cumulative effect of the errors of the court which caused harm to the Appellant and caused rendition of an improper verdict, deprived the Appellant of a fair trial. We find nothing in this point except repetitious references and arguments regarding matters that we have already passed upon, and therefore Appellant's tenth point is overruled.

Finding no reversible error in this matter, Appellant's points are all overruled and the judgment of the trial court is in all things affirmed.