The HANOVER INSURANCE COMPANY,
Appellant,

v.

Nicholas HOCH et ux., Appellees.

No. 607.

Court of Civil Appeals of Texas,
Corpus Christi.

June 22, 1971.

Rehearing Denied July 29, 1971.

Guittard, Henderson, Jones & Lewis, O. F. Jones, Victoria, for appellant.

Lawrence P. Gwin, Bay City, for appellees.

## OPINION

BISSETT, Justice.

This is a suit on a fire insurance policy to recover for the loss of a house that was totally destroyed by fire.

Nicholas Hoch and wife, Josephine C. Hoch, plaintiffs below and appellees herein, sued The Hanover Insurance Company, defendant below and appellant herein, to recover the full amount of a fire insurance policy on a house in which plaintiffs-appellees claimed an insurable interest. Trial was to a jury. All issues were answered favorably to plaintiffs-appellees, and based on the jury findings, judgment was entered in their favor in the sum of $4,000.00.

Appellant has duly and timely perfected an appeal to this Court. We affirm.

In November 1960, Mrs. Josephine C. Hoch, appellee, was notified by her aunt, Mrs. Leola Turner, that she was unable to make the note payments on her home located in Matagorda County, Texas. Mrs. Turner requested financial help and assistance from Mrs. Hoch, whereupon appellees sent Mrs. Turner the requested amount of money. Thereafter, Mrs. Hoch made the regular monthly payments on the note, which was secured by a vendor's lien on the home premises then owned by Mrs. Turner. The payments were made by check, duly signed by Mrs. Hoch. A few of the checks were made payable to Mrs. Turner, but the vast majority thereof were made directly to Mrs. Eleanor Church, the mortgagee.

Mrs. Hoch testified that all such payments made by her to Mrs. Turner represented a loan to Mrs. Turner, who promised to repay her. She was corroborated by two of Mrs. Turner's sisters, Mrs. Henson and Mrs. Colvin, and by her own sister, Mrs. Lewis. In addition, appellees introduced in evidence a copy of a letter that Mrs. Hoch had written to Mrs. Turner, dated June 12, 1961, wherein it is stated definitely that Mrs. Hoch expected to be repaid for all advancements and that such advancements would bear interest at six per cent (6%). Appellant introduced a letter dated March 16, 1961, addressed to Mrs. Turner, signed by Mrs. Hoch, wherein it was stated "Like I said before, should you sell the house at some time in the future, you can pay it back; or if the kids get to where they can, they can pay it back. And if I never get it back, maybe it will help buy me standing room at least in Heaven."

The note on Mrs. Turner's home was paid in full about August 1, 1965. During the time that Mrs. Eleanor Church owned the note and the lien securing the same, she (Mrs. Church) kept the house insured against loss or damage by fire.

Mrs. Turner did not repay the loan during her lifetime. She died testate in April 1966. She devised all of her property to her two children, Mrs. Barbara Legg and Alfred Turner. The devise included the house and the land upon which the same was situated, and upon which appellees had made all monthly payments from November 1960 until August 1965. Subsequent to Mrs. Turner's death, Alfred Turner conveyed his interest in the premises to his sister, Mrs. Barbara Legg.

In October 1966, Mrs. Hoch became concerned about the hazard insurance on the house. Evidently, she had been advised that the house was uninsured. She then contacted Campbell-Huitt Insurance, in Palacios, Texas, and asked an employee of the agency, to check and see if there was any fire insurance on the house. There was some discussion about the matter and Mrs. Hoch explained to the employee of Campbell-Huitt that while she did not own the place, she had, nevertheless, made some of the house payments and claimed an interest in the premises. She exhibited some of her cancelled checks and asked: "Would you please investigate it and see if it is okay to have insurance?" She was advised that they would check it out. Later on, Mrs. Hoch received a letter from Campbell-Huitt Insurance, an agent of the appellant insurance company, dated October 26, 1966, reference "Insurance on Mrs. Alfred Turner Estate Dwelling", signed by J. Fred Huitt; the first paragraph of the letter reads as follows:

"We have had the above dwelling on binder in the amount of $4,000.00 while we checked out the possibility of other insurance. We find that this policy will be necessary and have checked with our company underwriters and they advised that the policy should be made out in your name as the person insured."

Mrs. Hoch, at the time the binder was issued, paid the first year's premium and signed a note for the deferred premium that would be due and payable over the next two years. A mistake had been made by Campbell-Huitt in calculating the amount of premiums due, so request was made of Mrs. Hoch for payment of an additional $4.00 for the first year's premiums and the execution of a new note covering the correct amount of deferred premium. Mrs. Hoch complied with the request and the appellant insurance company issued its policy, effective October 13, 1966, covering the three year period commencing with effective date and ending on October 13, 1969, naming Mrs. Hoch as the insured, and insuring the house against loss or damage by fire up to $4,000.00. Both the letter and the policy were introduced in evidence.

Mrs. Hoch, further testified that she and the lady in the Campbell-Huitt office discussed whether there was other insurance and that she asked the lady "to look into it, and if there was other insurance then refund my money." She also testified that she had not heard that there might possibly be some insurance that would inure to her benefit, and that she had no reason to believe at that time that there was any other insurance.

Mr. Fred Huitt, a partner in Campbell-Huitt Insurance, was called as a witness by appellant. He testified that he was out of his office on the day that Mrs. Hoch called. His secretary told him that Mrs. Hoch wanted insurance on the house. He inspected the property and approved it for $4,000.00 fire and windstorm insurance. His secretary asked him to check his records to see if they had insurance on the house under the name of someone else. He did, but found no such insurance or coverage. He did not check with any other insurance agency in Palacios, Texas, although there were two other agencies there at that time. He further testified that he, as the agent for appellant, wrote the policy for Mrs. Hoch. When asked on direct examination for an explanation of why the "policy refers to a tenant dwelling, Mrs. Alfred Turner Estate, and then it shows 'Insured Mrs. Nicholas Hoch'", he said:

"This particular dwelling belonged to Mrs. Alfred Turner's estate, and Mrs. Nicholas Hoch also had an interest in this estate, and we identified the property as Mrs. Alfred Turner's estate and wrote the policy in the name of Mrs. Nicholas Hoch, she was the insured under this policy."

Later, and also on direct examination, the witness Huitt further said:

"Well, this property was involved in an estate, but we believed that Mrs. Hoch

had an interest in this property, and so we asked—to tell you the truth, I am not sure who we asked, but some company people that came through our office, and then we talked to people on the phone, and the specific person I talked to or the specific company I talked to I wouldn't say, but we satisfied our own knowledge that the policy should be issued in Mrs. Hoch's name because we believed she had an interest in this property."

The agency employee with whom Mrs. Hoch had the discussion and conversation as already detailed, did not testify, although the record shows that a Mrs. Washington, the secretary to Mr. Huitt who typed the letter to Mrs. Hoch, was in the employ of Campbell-Huitt both at the time of the conversation and at the time of trial.

Appellant, in response to interrogatories, admitted that it had been consulted before the policy was issued and that the term "possibility of other insurance" used in Campbell-Huitt's letter to Mrs. Hoch dated October 26, 1966, as being "checked out" referred to the possibility of other fire and extended coverage insurance on the dwelling covered by their policy.

On April 30, 1967, the dwelling was completely destroyed by fire.

It was also established by the evidence that on November 21, 1966, Farmer's Mutual Protective Association issued a fire insurance policy to Mr. and Mrs. Legg covering the same house. This policy covered the period from November 21, 1966 to November 21, 1971. This company paid Mr. and Mrs. Legg $5,500.00 on May 2, 1967, for the loss sustained by them, the owners of the house, when it was destroyed on April 30, 1967. This particular policy was a renewal policy; therefore, on October 13, 1966, when appellant insured the house against loss or damage by fire, naming Mrs. Hoch as the insured, the house was at that time already insured by Farmer's Mutual Protective Association, naming Mr. and Mrs. Legg, the devisees of Mrs. Turner, as the insured.

Neither Mr. Hoch nor Mrs. Hoch, appellees, had any knowledge of or notice that the dwelling was already insured against loss or damage by fire by Mr. and Mrs. Legg with Farmer's Mutual Protective Association, naming them as the insured, when their application for fire insurance was made, or when the policy was issued, or when the dwelling was destroyed by fire.

After the loss, although the claim was duly and timely made and filed by appellees with appellant, liability was denied on the ground that appellees did not have an insurable interest in the destroyed dwelling.

Appellant, in its defensive pleadings, among other defenses, denied that appellees had any insurable interest in the subject property and alleged that the policy in question was procured because of a mutual mistake by and between appellees and appellant concerning material facts upon which the policy was predicated.

Appellant also filed a third party action against Albert Lane Legg and wife, Barbara Lucille Legg, to recover any subrogated rights which it may have against them in the event appellees recover judgment against appellant in the suit herein filed by appellees. This third party action, over objection of appellant, was severed from the cause of action instituted by appellees against appellant.

The case was submitted to the jury on Ten (10) special issues, whereby the jury, in substance, found that (a) Mrs. Leola Turner requested Mrs. Hoch to make the payments due Mrs. Church on the Vendor's Lien Note owing on her house, (b) Mrs. Hoch paid Mrs. Church $3,500.00, (c) Appellant, through its agents, agreed to check the possibility that the owners of the Turner dwelling had insurance on the home, (d) Appellant, through its agents, represented to Mrs. Hoch that the policy issued to her was a valid policy of insurance, (e) Mrs. Hoch relied on the representations of appellant's agents that such policy of insurance was a valid policy, (f)

the money paid by Mrs. Hoch to or on behalf of Mrs. Turner was a loan, (g) the money paid by Mrs. Hoch to or on behalf of Mrs. Turner was not a gift; and, (h) that both Mrs. Hoch and Mr. Huitt, appellant's agent, at the time the policy was issued did not believe that there was in existence another policy of insurance on the dwelling.

Appellant by points of error 1, 2 and 7, asserts that it was entitled to judgment because the policy in question was obtained by mutual mistake of fact on behalf of both appellant and appellee. We do not agree.

■ "A mutual mistake is one common to both parties to the contract, each laboring under the same misconception." Commercial Standard Insurance Co. v. White, 423 S.W.2d 427 (Tex.Civ.App., Amarillo 1967, wr. ref., n. r. e.) and the cases cited therein; 38 Tex.Jur.2d, Mistake, § 4, p. 741.

There are many cases that hold that equity will intervene to set aside contracts entered into under a mutual mistake of fact. Abbott v. International Bldg. & Loan Ass'n, 86 Tex. 467, 25 S.W. 620 (1894); Travelers' Ins. Co. v. Jones, 32 Tex.Civ.App. 146, 73 S.W. 978 (1903, wr. ref.); International Life Ins. Co. v. Stuart, 201 S.W. 1088 (Tex.Civ.App., Fort Worth 1918).

The evidence in this case conclusively shows that the policy in question was not issued on the basis that there was not then another policy outstanding. A review of the evidence reveals that Mrs. Hoch wanted insurance that would protect her in the event that the dwelling was destroyed by fire. She knew that Mrs. Church kept the house insured up until the time that the note was paid. She knew that Mrs. Legg owned the premises at the time she made inquiry concerning insurance. She was uncertain as to whether she was protected by insurance or not. She asked the agent to check and find out if there was insur-

ance on the house. We are convinced that Mrs. Hoch was inquiring into whether there was then in existence any policy that would protect her; if there was, then there would be no need of further insurance for she must have realized that she was not entitled to double coverage; if there was not, then she wanted coverage. The agent put a binder on the property; he searched his files; from his investigation, he determined that there was nothing in his files that indicated that there was in force any insurance that would insure Mrs. Hoch; he took the matter up with the appellant company; the policy was then issued naming Mrs. Hoch as beneficiary. At the time of issuance of the policy, the agent knew that the property was owned by the estate of Mrs. Turner. Appellant made no inquiry of any representative of the estate of Mrs. Turner prior to the issuance of the policy.

There was, however, in existence another policy of insurance on the dwelling when appellant issued the policy in question, but Mrs. Hoch was not named therein as the insured or beneficiary. Mrs. Hoch was not paid any of such proceeds. This policy did not inure to her benefit in any way. There is no evidence in the record that Farmer's Mutual policy afforded Mrs. Hoch any protection at all; the record simply reveals that there was such a policy and that the proceeds thereof were paid to Mr. and Mrs. Legg.

■ We are convinced that when all is said and done, it was fully understood that Mrs. Hoch wanted fire and extended coverage on the dwelling that named her as an insured so that she would be paid the proceeds in the event of damage or destruction thereof; that both parties admitted to themselves and to each other the possibility that there might be outstanding at that time an insurance policy that did afford Mrs. Hoch the desired protection; and, that thereafter the agent for appellant made an investigation, the results of which satisfied appellant that there was no such

outstanding insurance. Therefore, when appellant issued the policy to Mrs. Hoch, it consciously and knowingly assumed the risk of an outstanding policy, if any. The policy was issued on the basis that Mrs. Hoch had an insurable interest in the dwelling that she wanted to protect.

There can be no mistake of fact where both parties consciously considered the possibility of other insurance and were aware of the uncertainty as to whether or not there was other insurance. The record does not show a mistake of fact in this case. Appellant's points 1, 2 and 7 are overruled.

Appellant also complains of the action by the trial court in severing the Third Party Complaint filed by appellant against Albert Lane Legg and wife, Barbara Lucille Legg, from the main action (point 9), and in overruling appellant's motion for continuance (point 8).

On June 2, 1970, pursuant to a motion filed by appellees, the trial court severed the cause of action asserted by appellant in its Third Party Complaint against Mr. and Mrs. Legg from the cause of action asserted by appellees against appellant. On the same day the trial court granted Mr. and Mrs. Legg, third party defendants, a continuance because of the illness of Mrs. Legg. Appellant objected to both the severance and the continuance. There, appellant, in open court, dictated a motion for continuance, that was later transcribed and signed by counsel for appellant.

The motion for continuance as set out in the record is not supported by affidavit, as is required by Rule 252, Texas Rules of Civil Procedure. The motion does recite that it was to be sworn to by counsel for appellant, but the motion as shown by the transcript is shown to be signed by counsel for appellant but is not sworn to by him. The trial court did not err in overruling appellant's motion for continuance. Jim Sanders Ford Company v. Ontiveros, 389 S.W.2d 614 (Tex.Civ.App., Waco 1965, n. w. h.); Hobbs v. Grant, 314 S.W.2d 351 (Tex.Civ.App., Austin 1958, wr. ref. n. r. e.).

There is another reason why the trial court did not err in overruling the motion for continuance. The ground assigned in the motion was that Mrs. Legg was ill and could not appear at the trial and that her testimony was important to appellant in defense of the action asserted against it by appellees; counsel admitted to the trial court that he was not sure what the testimony of Mrs. Legg would be with reference to the defenses in the case. The motion was insufficient as appellant should have stated what he expected to prove by the witness with sufficient clarity and definiteness as to advise the court of the relevancy and materiality of the testimony. Appellant's motion for continuance did not comply with Rules 251 or 252, T.R.C.P., and was properly overruled. Garcia v. Canales, 434 S.W.2d 895 (Tex.Civ.App., Corpus Christi 1968, n. w. h.) and the cases cited therein; Emmco Ins. Co. v. Burrows, 419 S.W.2d 665 (Tex.Civ.App., Tyler 1967, n. w. h.). It was not an abuse of discretion to overrule the motion. Appellant's point 8 is overruled.

In the matter of the severance of the Third Party Complaint, it is settled that the trial court is vested with broad discretion in acting on motions to sever causes of action. Hamilton v. Hamilton, 154 Tex. 511, 280 S.W.2d 588 (1955); Wilson v. City of Port Lavaca, 407 S.W.2d 325 (Tex. Civ.App., Corpus Christi 1966, wr. ref. n. r. e.). In the instant case, appellees were entitled to a trial on its cause of action asserted against appellant. The outcome of appellant's suit against Mr. and Mrs. Legg would not affect appellees. Appellant has the same burden in its suit against the third party defendants in a separate trial against them as it would have had in the main action. There is no showing that the trial court abused its discretion in granting the severance. Rule 41, T.R.C.P. Rose v. Baker, 143 Tex. 202, 183 S.W.2d 438 (1944); Allen & Co. v. Wyler Textiles, Ltd., 371 S.W.2d 728 (Tex.Civ.App., Dallas 1963, n. w. h.) and the cases therein cited.

Accordingly, appellant's point 9 is overruled.

Next, we consider appellant's point 10, wherein error is claimed because the trial court, over appellant's objection, permitted Mrs. Hoch to testify as to conversations that she had had with Mrs. Leola Turner. Argument is made that such conversations were hearsay as to appellant and that their admission was in violation of Article 3716, Vernon's Ann.Civ.St., the dead man's statute. We reject that argument.

■ Mrs. Hoch's testimony as to her conversations with Mrs. Turner was offered to show that the money paid by Mrs. Hoch on Mrs. Turner's home, as between them, was a loan and not a gift. The question of whether such money was a gift or a loan was one of the principal issues in the case. Such testimony is not hearsay. See McCormick & Ray, Vol. 1, Evidence, § 795, p. 586; Rupert v. Swindle, 212 S.W. 671 (Tex.Civ.App., Ft. Worth 1919, n. w. h.); Hammond v. Hammond, 43 Tex.Civ.App. 284, 94 S.W. 1067 (1906).

■ Appellant's objection that the admission of such conversations into evidence violated Article 3716, V.A.C.S. is without merit. The record shows that Mrs. Turner left a will wherein she devised all of her property to her son, Alfred Turner, and to her daughter, Mrs. Legg; the Third Party Complaint filed by appellant sues Mr. and Mrs. Legg as individuals; they are not sued in any legal representative capacity of the estate of Mrs. Turner, nor as heirs of decedent. The answer filed by Mr. and Mrs. Legg in response to appellant's pleading is made in their individual capacity and not in any legal representative capacity of the estate of Mrs. Turner, nor as heirs of Mrs. Turner. Since any claim asserted against Mr. and Mrs. Legg is asserted by appellant because of their ownership of the dwelling at the time of the fire and of the policy insuring them for such loss, they are necessarily sued as devisees under the will of Mrs. Turner. The statute does not apply

to them, either as individuals or as such devisees. Article 3716, V.A.C.S. does not extend to devisees, since they are not included within the words "heir or legal representatives", as used in the statute. Newton v. Newton, 77 Tex. 508, 14 S.W. 157 (1890); McCormick & Ray, Vol. 1, Evidence, § 325, p. 280. Moreover, Mr. and Mrs. Legg are brought into the case by appellant, not by appellees. Appellant's point 10 is overruled.

Appellant's points 3, 4 and 5 assert that the trial court erred in entering judgment for appellees because (a) there is no evidence to support the answer of the jury to special issue 8, and (b) the answer of the jury to this issue is not supported by sufficient evidence, and is against the great weight and preponderance of the evidence. Special Issue 8, as submitted, reads as follows:

> "Do you find from a preponderance of the evidence that BOTH Plaintiff Mrs. Hoch and the Defendant's agent, Mr. Huitt, believed, at the time that the Defendant's fire insurance policy was issued, that there was, not any other fire insurance policy in existence insuring the premises in question?
>
> Answer 'We do' or 'We do not' ".

This issue and the jury's answer "we do not" is incorporated in the judgment entered in this case. No objection is registered. The jury experienced some difficulty in answering the above issue. Several notes were sent in to the trial court by the jury foreman. An additional Special Issue 8 was submitted; this additional issue and the answer of the jury reads as follows:

## "SPECIAL ISSUE NO. 8

Do you find from a preponderance of the evidence that both plaintiff Mrs. Hoch and the defendant's agent, Mr. Huitt, believed, at the time that the defendant's fire insurance policy was

issued, that there was not any other fire insurance policy in existence insuring the premises in question?

Answer: 'they believed there was not any other insurance' or 'they did not believe there was any other Insurance'.

Answer: *They did not Believe There was any other Insur."*

The record does not reveal that any objection was made to the submission of this additional issue. Appellant has no point of error on the submission of the additional issue and we will not notice it further. Appellant's point of error 6, reads as follows:

### "POINT OF ERROR NO. SIX

The Trial Court erred in entering Judgment against Appellant based on the answer of the jury to Special Issues 8, 9 and 10, in view of the apparent hopeless misunderstanding on the part of the jury regarding said issues."

Special Issues 9 and 10 were to be answered only if the jury answered "we do" to the first Special Issue 8 submitted to them. As the jury answered "we do not" to Special Issue 8, no answer was made with respect to Special Issues 9 and 10.

The question of "no evidence" is one of law and our judicial review of such questions imposes on us a duty to consider only the evidence and the inferences favorable to the jury findings and to disregard all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965). In considering the point of "against the great weight and preponderance of the evidence", we must review all the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

In our opinion, appellant's points 3, 4, 5 and 6 are not well taken. There is ample evidence to support the jury's answer to the issues. It is either undisputed or is found by jury findings that (a) neither Mrs. Hoch nor Mr. Huitt, appellant's agent, knew at the time appellant issued the policy, that the Farmer's Mutual policy was then outstanding, (b) Mrs. Leola Turner requested Mrs. Hoch to make payments on her home, (c) Mrs. Hoch paid $3,500.00 to Mrs. Church on the house note and mortgage, (d) appellant agreed to check the possibility that the owners of the Turner dwelling had insurance on the house, (e) Appellant represented to Mrs. Hoch that the policy issued to her was a valid policy, (f) Mrs. Hoch relied on the representatives of appellant's agent that such policy was valid, (g) the money paid by Mrs. Hoch on behalf of Mrs. Turner was a loan, not a gift, (h) the dwelling was destroyed during the time that the policy issued to Mrs. Hoch by appellant was in force, (i) Mrs. Hoch duly and timely filed a claim, and (j) appellant refused to pay the claim. We have already held that the policy in question was not obtained or issued as the result of a mutual mistake of fact. Appellant admits in its brief that appellees have an insurable interest in the dwelling. No point of error is brought forward asserting that they did not have an insurable interest therein. While the facts in this case are different from the facts presented to our Supreme Court in St. Paul Fire & Marine Insurance Co. v. Crutchfield, 162 Tex. 586, 350 S.W.2d 534 (1961), we believe, and so hold, that the principles, logic and reasoning announced therein are controlling of this case.

Under the circumstances, we believe that jury issues on the several questions posed were properly raised by the evidence, that the answers by the jury are not against the weight and preponderance of the evidence, and all disputed issues having been resolved against appellant, we find no reason to disturb such fact findings. No reversible error is shown. Appellees are entitled to judgment under the record before us. Accordingly, appellant's points 3, 4, 5 and 6 are overruled.

Appellant contends in point 11, that the trial court erred in refusing to ádmit into evidence Mrs. Legg's (third party defendant) answer to appellant's Interrogatory No. 10, concerning whether the executrix of the estate of Mrs. Leola Turner made any inquiry into the type of claim filed by Mrs. Hoch in the estate. The excluded answer was to the effect that among the personal effects of Leola Turner there was a letter from Josephine C. Hoch stating that the money was a gift and not a loan on any property owned by Leola Barbara Turner. Such answer amounted to no more than a conclusion from a defendant in a third party action brought into the case by appellant, not by appellees. Besides, the letter referred to in the excluded answer to Interrogatory 10 was admitted into evidence without objection on the part of appellant. The jury had the letter before them, not the conclusion of Mrs. Legg as to its legal effect. It was not error to exclude the answer to Interrogatory 10. Appellant's point 11 is overruled.

Appellant complains of improper jury argument on the part of counsel for appellee in its point 12. This point has no merit. The record is silent as to just what counsel for appellees said in his argument. We do not have before us any Bill of Exception bringing forward any transcribed portion of the jury argument about which complaint is made. Appellant did make a Bill of Exception wherein counsel for appellant stated what counsel for appellees said before the jury. A statement by counsel as to what opposing counsel said is not sufficient for us to pass on this point. The statement of facts does not set out the action, if any, that was taken by the trial court as a result of such argument. The error, if any, was not preserved for appellate review. Southern Pacific Company v. State, 438 S.W.2d 413 (Tex.Civ. App., El Paso 1969, n. w. h.). Point 12 is overruled.

Appellant's remaining point 13 asserts that the judgment should be reversed because the record shows conclusively that the jury committed misconduct in determining the effect of their answers while deliberating, and attempted to reconcile their answers in such a way as to favor appellees. We have already made mention of the fact that the foreman of the jury sent several notes to the trial judge in connection with their deliberations, primarily on special issue 8. We do not believe that the language of the notes indicated that the jury was attempting to favor appellees. The notes simply made it plain that the jury believed that neither Mrs. Hoch nor Mr. Huitt, appellant's agent, believed that the dwelling was then covered by insurance.

It is well established that the fact that the jurors know the legal effect of their answers does not warrant the inference that they arrived at their verdict in other than a lawful manner. City of Fort Worth v. Miller, 336 S.W.2d 296 (Tex. Civ.App., Fort Worth 1960, wr. ref., n. r. e.) ; Martinez v. Pena, 139 S.W.2d 337 (Tex.Civ.App., El Paso 1940, wr. dism., judg. corr.).

The allegation of jury misconduct was not supported by affidavit of anyone. The record is not clear, but evidently the trial court overruled appellant's amended motion for new trial prior to the time that appellant called Mr. Jack E. Brown, the foreman of the jury, as a witness in support of his complaint about jury misconduct. The nature and tenor of the questions propounded to Mr. Brown by appellant's Bill of Exception inquired into his mental processes, and explored what may have been the mental processes of the other jurors. Counsel for appellant, at the close of his examination of Mr. Brown, and in response to a comment made by the trial judge, said: " * * * we do not offer this testimony as evidence of misconduct, nor do we offer it as an effort to convey the mental processes of the Jury, or of this Juror, but simply for the purpose of showing the effect of counsel's argument, that is, that it was prejudicial and did result in prejudice to the defendant. This is all we have on the bill of exception."

■ We have considered all testimony adduced in connection with appellant's charge of jury misconduct as expressed by its point of error and conclude that the trial court was correct in refusing to hear the testimony of the juror (Mr. Brown) on the ground that it was an inquiry into the mental processes of the jurors. We have further studied the record, have carefully examined the notes exchanged between the trial judge and jury foreman, and are satisfied that the conduct and action by the jury did not constitute misconduct. No reversible error is shown by any misconduct on the part of the jury and they did nothing that was reasonably calculated to cause or probably did cause or result in the rendition of an improper judgment. See Trousdale v. Texas & N. O. R. R. Co., 264 S.W.2d 489 (Tex.Civ.App., San Antonio 1953), aff'd 154 Tex. 231, 276 S.W.2d 242 (1955). Appellant's point 13 is overruled.

The judgment of the trial court is affirmed.